By the Court,
Robertson", Ch. J.
Upon a trial of a cause by a court without a jury, the proper place for inserting the findings of the court upon matters pertinent to the issues, but not contained in its “ decision,” is in the “ case,” prepared for hearing the appeal. It is not erroneous for the court to omit to state, in its decision under the 267th section of the Code, even facts material to the issue, any more than for a jury in its verdict, the presumption of law being, that its findings on such facts are favorable to the successful party, as every thing will be intended necessary to sustain the verdict. (Higgins v. Moore, 6 Bosw. 344.) The 268th section gives an appel *464 lant a right to have inserted in his “case’’ a brief specification of the facts found by the court, and its conclusions of law thereon. ' He has therefore a right to require any pertinent facts to be passed upon by the court in the settlement of such case, and his redress, if any, for a refusal must be by appeal from such settlement. Until after a “ decision” by the court, it cannot be divined what facts it may consider material to state, and no exception can be taken to a refusal to find any others, since neither party is then in court for the purpose of taking such exceptions. The 268th section alone provides for taking exceptions after the decision is made, and they must be written and filed, not taken orally; consequently it is unnecessary to consider any (of what are termed) exceptions to refusals to find according to certain requests, which appear in the case before us, without stating when or where such requests were made.
The objection taken on the trial of this action that it should have been tried by a jury was properly overruled. After the trial has commenced, is not a proper time for determining whether there should be a jury trial, when there are several issues some of which are clearly triable without a jury. The legislature have the power of prescribing in what way a trial by jury may be waived (Const, art. 1, § 2,) and may make acts of omission so well as a disclaimer evidence of such waiver. The has provided a mode of determining, whether the whole issues Code or any question of fact are to be tried by a jury, upon a distinct application (§ 254,) which must be made within eighteen days after issue joined) (33d Gen. Court Rule.) It is very evident, that two issues cannot well be tried together, one by a court and one by a jury. To lose the whole benefit of a trial, because the court may have erroneously determined that a jury was not necessary, would be manifestly unjust. If a party wishes to secure his right of trial of any of the issues by a jury, he should make his application before hand, so that such right may be separately passed upon before the trial, and the question may be settled, if necessary, by appeal, as a refusal to grant the application would probably be, if a mat *465 ter of strict right, the subject of an appeal. But to wait until the trial is entered upon before making an application for a jury trial, is a waiver. It is settled that where a common law cause of action is joined with an equitable one and the trial of the latter has been entered upon, but there is a failure of evidence to sustain it, the court must still proceed with the trial of the former, even without a jury. (N. Y. Ice Co. v. N. Western Ins. Co., 23 N. Y. Rep. 357. Barlow v. Scott, 24 id. 40.) This can only be upon the principle, that as one of the issues was triable without a jury, the entering upon its trial without a previous application under section 254 was a waiver of a jury, there being no provision in the Code for two trials of issues in an action, at the mere election" of the party, without the sanction of the court. The denial of a jury to try one of the issues in this case was therefore not error.
For the purposes of this appeal we are bound to assume, that it was established on the trial, that the facility of letting the plaintiff’s premises had been diminished, their rent depreciated and the buildings injured by the noise and jar created by the motion of the defendant’s engine, as there was considerable evidence to that effect. And although the evidence may have been conflicting, it was not so preponderating to the contrary, as to justify us in overturning the findings of the court on those points. (Cohen v. Dupont, 1 Sandf. 260.) It may also be assumed, for the purpose of testing the plaintiff’s right to relief, that the defendant’s business was lawful and publicly beneficial, and conducted with every reasonable precaution, as to the character of his building and machinery and mode of using them, to prevent unnecessary injury to the plaintiff. This presents the naked question, whether the lawful character of the results of an occupation, trade or mechanical art, or the care with which it is carried on, can prevent any right of action by those, whose enjoyment of life and property is disturbed, by the mode or means of conducting such occupation, trade or mechanical art. It is true, an indictment for a nuisance will not lie for conducting an occupa *466 tion, which is only disagreeable and unpleasant to others, although it would, if it were prejudicial to the enjoyment of life and property. (Front’s case, 4 City Hall Rec. 87.) An action lies, however, for the commission of acts by which the enjoyment of life and property has been seriously impaired. (Fish v. Hodge, 4 Denio, 311. Catlin v. Valentine, 9 Paige, 575.) In one case (Fish v. Dodge, ubi sup.) the noise of manufacturing steam boilers has been held to be so. In another (Soldan v. De Held, 2 Sim. N. S. 133,) the ringing of bells. In a third, the holding a banner inscribed “Beware of mock auctions ” in front of an auctioneer’s shop, (Gilbert v. Mickle, 4 Sandf. Ch. 357;) and lastly the disturbance of the rest and comfort of a family by the constant barking and howling of a dog. (Brill v. Flagler, 23 Wend. 354.) Grasworks, producing special injury, are also a nuisance. (Carhart v. Auburn Gaslight Co., 22 Barb. 297.) The general principle is also sustained in the recent cases of Dennis v. Eckhardt, (2 Am. L. Reg. N. S. 167,) and St. Helen’s Smelting Co. v. Tipping, (5 id. 104.)
Mere noise perhaps, unless unusual, ill-timed or deafening, may not be such a nuisance, as to authorize an indictment or an action therefor, even when it interferes with another person’s avocations or pursuits. Thus the hum, bustle and voices of a school, which disturbed the studies of a professor in the neighborhood, (Comyn’s Dig. tit. action on the case C. 294,) or the passage of railway trains near a church, (First Baptist Church v. Utica and S. R. R. Co., 6 Barb. 313,) were held not-to entitle such professor, or the congregation worshipping in such church to special protection. The law could not undertake to lay down a distinction between different useful occupations, or the relative merits of the school and the occupation of the professor, or of the worship of the congregation and the railway, but whenever the senses and comfort of every human being, whatever his occupation or pursuits, are assailed by such means as bells ringing, steamboilers hammered, and dogs howling, there is no such competition. This case, however, presents something more palpable than discomfort by noise. *467 The right of jarring a neighbor’s house by the motion of a steam engine upon one's own premises, cannot depend at all, upon the utility and lawfulness of the purpose for which such motion is employed, or of its final results. The intermediate injury, before such results are obtained, wrought upon another’s property or enjoyment of life, makes such employment unlawful. There is a distinction which may be easily conceived although not always as easily defined, between acts, which may be done on one’s own premises, although to the injury of adjoining premises or their appurtenances, without responsibility therefor, and those which may not. A neighbor’s light may be obscured by a wall built upon one’s land, without such responsibility, because the right so to build is part of the elements of ownership; (Mahan v. Brown, 13 Wend. 91; Parker v. Toole, 19 id. 309; Pickard v. Collins, 23 Barb. 444.) Burning one’s own fallow land is a legal mode of using it, and a neighbor is bound to protect himself against the spreading of a fire kindled for the purpose; (Clark v. Foot, 8 John. 421; Stuart v. Hawley, 22 Barb. 619; Bennet v. Scutt, 18 Barb. 347.) An injury to a neighbor’s house, by excavating on on.e’s own soil is not actionable, (Pauton v. Holland, 17 John. 292,) although if it affected the natural soil it would be. (Farrand v. Marshall, 21 Barb. 409.) But, even without malicious intent, burning brick even on one’s own land; (Walter v. Lefe, 4 De G.& S. 315.) Creating assemblages of people on a sheet of water, the right of fishing and sporting in which was reserved to others; (Bostock v. N. Staffordshire R. W. Co., 21 Law Journ. N. S. 2 B. 384;) making the ordinary use of a building offensive and injurious to’ a neighbor; (Pickard v. Collins, ubi sup.) Throwing dirt . and stones on the premises of another, by blasting rocks on one’s own, (Hay v. Cohoes Co., 2 N. Y. Rep. 159;) overflowing a neighbor’s premises by collecting rain too near them on one’s own, (Bellows v. Sackett, 15 Barb. 96;) permitting a stranger to disturb the soil on one’s own premises, so as to allow it to descend upon a neighbors, (Gardner v. Heartt, 2 Barb. 165;) are all acts for injury by which to a neighbor *468 an action by the latter will' lie. Other cases are to be found collected and classified in the case- of Radcliffe v. Mayor of Brooklyn, (4 N. Y. Rep. 195.)
But in fact in the case before us, the nuisance did not consist, either of the mode of using the defendant’s premises, or of any thing upon them, but in the application of steam as a motive power to an .engine already there ; which, while quiescent, was harmless and was only rendered an agent of mischief by the motion communicated to it by such application. Perhaps, as the court might not be able judicially to know, that the motion of a steam engine would necessarily produce injury to adjoining buildings, under the former system of divided jurisdictions of courts and insufficient power in any one alone to do complete justice, a trial at law might have been necessary before even a preliminary injunction, (Phenix v. Commissioners of Emigration, 12 How. Pr. 1;) or a feigned issue before a final one. (Mohawk Bridge Co. v. Utica R. R. Co., 6 Paige, 563.) But the union of all jurisdictions in one court, and its power to try every question of fact by a jury, avoiding such embarrassing questions as those raised in Blunt v. Hay, (4 Sandf. Ch. 362,) enable the rights of every, one to be disposed of at one time; (N. Y. Ice Co. v. N. Western Ins. Co., ubi sup.; Genet v. Howland, 30 How. 360 ;) and do away with the necessity of going through two courts in order to prevent an evil or redress a wrong. The Code, moreover, renders an appeal to a preliminary action, to establish the character of the defendant’s acts as constituting a nuisance, unnecessary even to obtain a preliminary injunction or order, for it permits it in all cases where such acts if committed or continued during the litigation would produce injury, (§ 219, subd. 1,) without regard either to the amount or character of such injury.
It is said, however, that no injunction ought to be granted,, because every injury done by the motion of the defendant’s engine to the plaintiff’s property, is susceptible of pecuniary compensation. Of course for the past, she seeks indemnity in this action by pecuniary damages ; but even if she could be *469 compensated by money, for the daily wrong to be done hereafter by the motion of the defendant’s machinery, she is not bound td submit to such a series of wrongs. The suppression of c< oppressive and interminable litigation,” and the prevention of “ multiplicity of suits,” equally with protection against “ irreparable mischief,” form grounds of equitable interference. (2 Story's Eq. Jurisp. 238, §§ 925, 927.) It would be strange, if not intolerable, that justice,' though it prevents the commission of threatened crime, by exacting security against it, without waiting for its commission to punish it, should leave individuals exposed to the repetition of private intended wrongs, with no remedy but repeated actions for damages. If the allegations in the complaint in this case were well founded, there can be no doubt that unless the plaintiff should submit to the intended injury without complaint, the litigation could only terminate, when the engine ceased to be propelled by steam, a result which it was proposed to accomplish, and sooner less expensively and litigiously by an injunction order.
I do not understand, that the defendant seriously sets up the character of the neighboring houses, to show that by the endurance by others, of a like injury with that of the plaintiff, from the nuisance complained of, the only remedy was by indictment or. a joint action, as is supposed to be the rule of law laid down in Dougherty v. Bunting, (1 Sandf. 1,) and Lansing v. Smith, (8 Cowen, 146,) although the rule as laid down in the latter case, was disputed by the late learned chancellor of this state, ( 4 Wend. 9,) and is directly in conflict with Myers v. Malcolm, (6 Hill, 292.) Such joint injury, however, could not take away the preventive jurisdiction of equity. (Corning v. Lowerre, 6 John. Ch. 439. City of Georgetown v. Alexandria Canad Co., 12 Peters, 91.)
The defendant, however, undertook substantially to show that the whole vicinity was of such inferior character—such a nest of nuisances, that one more or less could not affect it; and that even the plaintiff herself, before she had sustained any injury from the defendant’s acts, had converted her own *470 premises into one. Certain occupations, trades or manufactures may become a nuisance in a populous city, which would not be so in the country, or among a scattered'population. Rut I know of no principle which outlaws premises on which a nuisance exists, so as to prevent the owner from being protected against other nuisances on other premises ; nor do I see how a balance could well be struck between the amount of mutual injuries done by them. Rut the evidence offered did not come up to showing that the kind of houses of which such neighborhood was composed, or the occupations carried on in them, were nuisances. They cannot, therefore, be judicially known to be such. At all events, the annoyances arising from them, were not of the same kind, or addressed to the same sense, as that caused by the defendant. So too, there is no evidence into what kind of factory, the plaintiff converted her buildings. The only acquiescence on her part in the application by the defendant of steam to his engine, consisted in not bringing an action. This would at most limit her right of action to damages for six years. In fact, she had no right of actual possession to her own premises, until a fortnight before the commencement of this action.
The only damages, however, which the plaintiff was entitled to recover, besides those for injury to the building, were those for a, depreciation of rent and loss of tenants, caused within a fortnight, between the 1st of May, 1863, and the commencement of this action, (May 14, 1863.) She was not entitled to recover for loss of rent before the former date, unless express malice was charged and proved, (Aldridge v. Stuyvesant, 1 Hall, S. C. 210,) because the tenants were not absolved from paying it. She was not entitled to recover it to the time of trial, upon the ground that the defendant’s unlawful acts only then ceased. In an action, where no injunction should be asked for, she could not recover them, unless the defendant’s acts, committed before the commencement of such action, caused a loss .of rent after it, and the only equitable,relief asked for was such injunction. It did not appear that she let her buildings beyond a year after the 1st of May, 1863, and *471 she could only recover for a diminution of that year’s rent by the apprehension by tenants of the continuance of the defendant’s injurious acts. For any damages for injuries caused by such acts since the commencement of this action, being entirely a cause of .action at law, her right of action therefor still remains, and she could not acquire a right to larger damages by joining such a cause of action with an equitable one. By obtaining a preliminary injunction, she could have stopped such acts, although she would thereby lose her right of action therefor. But she cannot recover them in this action by failing to apply for it in time. The evidence, even of any continued working of his engine by the defendant after the commencement of this action is very slight (if any) and only by implication.
Some of the witnesses who examined the plaintiff’s building in 1864 speak, indeed, of injuries caused by the vibration of it by the motion of the defendant’s engine, but do not state when they occurred, while some speak only of the effect two years before the trial. But there is no certain evidence of the specific effect of such disturbance upon the rent of the houses after the 1st of May, 1863. Only three witnesses were examined as to the amount of the plaintiff’s damages, (Gilchrist, Springsteen and McGuire;) one (Gilchrist) made the depreciation in yearly value of each of the plaintiff’s two houses by the motion of the defendant’s machinery $400 or $500; another (,Springsteen) made it between $175 and $200, and the third (McGuire) estimated it at between $250 and $300. This would not warrant the finding as to damages, unless a loss of rent to the time of trial was allowed, and this appears to have been the view of the court in awarding them, but which, as I have shown, is erroneous. Such a view could only be sustained by considering the mere existence of the engine as constituting the essence of the nuisance, and the creation of its motion by the application of steam as such a natural mode of such existence, that the working of it by successive supplies of fuel and water, although intermittent, formed a continuous nuisance, indivisible by intervals of rest, and pro *472 ducing constant injury down to the time of the trial. This is evidently erroneous, as the proper mode of abating the nuisance would be simply to do what was done in this case, prohibit any application of steam to such engine to cause it to move, which is a negative remedy only. The injurious acts, therefore, however frequently repeated, and with whatever short intervals of rest, were a succession of new and voluntary ones, not the natural or necessary consequences of each other, or so united as to be incapable of division in thought or act. The damages awarded to the plaintiff were, therefore, excessive.
The difficulty remains, what judgment ought to be rendered. I cannot find any data in the evidence upon which to reduce the damages, except to a nominal sum. It is not established that a year’s rent was lost, and the rate of depreciation of rent differed so widely in the estimate of the only three witnesses examined, varying from $500 to $150, that it would not be proper for us, sitting at general term, to undertake to pronounce upon it. There was enough evidence of loss of rent and other material issues in the action to have authorized the court at special term to have rendered a conditional judgment for damages to be assessed by a referee. The Code authorizes every apjoellate court to modify a judgment or order in any respect mentioned in the notice of appeal, as well as to reverse or affirm it. (§ 330.) They are only entitled to grant a new trial when “necessary and proper.” Anew trial would not be necessary or proper in this case, if it' can be avoided. And I can see no objection to this court now doing what the court at special term might and should have done, to wit, send the matter to a referee to assess the plaintiff’s damages, and modifying the judgment so as to render it conditional for the damages assessed, upon the confirmation of the referee’s report.
But as it is evident in this case that the plaintiff could only recover damages for the very short period between the termination of her tenants’ possession and the commencement of this action, the plaintiff may, perhaps, prefer to abandon the prosecution of such a reference, rather than incur the expense of conducting it. If so, and she file a consent to that effect, *473 the judgment may be modified by striking out the award of damages therein without prejudice to her right to bring an action for damages, if she is advised to do so.
In reference to the effect upon the injunction of thus dropping the part of the action relating to damages, I think there was ample evidence in the case of actual, past substantial damage, however comparatively small, and, therefore, any consideration of prospéctive damages may he laid out of view. I have already disposed of the question of the necessity of a recovery of damages by action before granting an injunction, and I, therefore, do not consider that the right to an injunction would he interfered with by an abandonment of the part of the action relating to damages.
But I think that the injunction prohibiting absolutely the use of steam in the defendant's building went too far. It does not appear that the injurious effects of it may not he remedied by some change in the machinery, or diminution of speed, or the pressure of steam, and the injunction order should be confined to preventing an improper use, (Lingwood v. Stowmarhet Co., 1 Eq. Ca. L. R. 79, 336. Crump v. Lambert, 3 id. 409,) and such qualification must be inserted in the judgment.
• The judgment must he modified accordingly, with no costs to either party, on the appeal.