Welch agt. Cook.

## SUPREME COURT.

IN THE MATTER OF THE APPLICATION OF BENJAMIN WELCH JR. agt.
JAMES M. COOK.

Upon the rendition of a regular judgment of *ouster* in the suit of the People
against a public officer, and in favor of another individual for the office, the
officer becomes actually ousted and excluded from office; and the party de-
clared to be entitled, upon taking the official oath and filing his bond (when
required), becomes *eo instanti* invested with the office, and entitled under
§ 437 of the Code, to demand and have the books and papers appertaining to
the office.

An application before a judge at chambers, under the 51st, 52d and 53d sec-
tions of 1 *R. S.* 125, and the 438th section of the Code, to compel the delivery
over to the applicant of the books and papers appertaining to a public office,
is not a motion *in the Supreme Court*, nor a motion *in any suit* pending in
the court. Any justice, therefore, has jurisdiction.

Such proceedings can not be considered proceedings *in the court below*, where
the judgment is appealed to the Court of Appeals; nor are they even pro-
ceedings *upon the judgment*, though the judgment is used as evidence of
what it determines. They have no connection whatever with the proceed-
ings in court, but are deemed by the statute original and independent pro-
ceedings.

Consequently an *appeal* from the judgment of ouster can not in any way
operate as a stay of proceedings on such an application.

MASON, Justice.—This is an application under the 51st, 52d
and 53d sections of 1 R. S. 125, and the 438th section of the
Code, to compel Mr. Cook to deliver to the applicant, Mr.
Welch, the books and papers appertaining to the office of state
treasurer.

The first question I propose to consider in this case, is the
objection raised to my jurisdiction to entertain this application.
By section 51 (1 *R. S.* 125), jurisdiction to entertain such pro-
ceedings was conferred upon the chancellor, any justice of the
Supreme Court, circuit judge, &c.; and by the 16th section of the
judiciary act of May 12th, 1847, the justices of the present
Supreme Court are invested with all the jurisdiction and powers
of the chancellor, the justices of the Supreme Court, vice chan-
cellors and circuit judges (*Laws of* 1847, *p.* 323, § 16). Before
the passage of this act, the chancellor and justices of the Su-

Welch agt. Cook.

preme Court could entertain these proceedings in any part of the state, without reference to the residence of the parties. It is insisted, however, by the counsel for Mr. Cook, that by the 51st section the application must be made in the county where the parties, or some one of them reside, or in an adjoining county (*Laws of* 1847, *p.* 334, § 51). I think it is quite clear that this section does not embrace the case under consideration. The section referred to is as follows: " All motions in the Supreme Court organized by this act, both enumerated and *non enumerated*, shall be made in the county in which the venue in the suit shall be laid, or in an adjoining county; and if no suit be pending, or if said motion be the first proceeding in any suit, the *motion shall* be made in the county where the parties in such suit, or person against whom the same is made, or some or one of them, reside." *This is not a motion in the Supreme Court,* but an application to me out of court, as justice thereof (1 *R. S.* 125, § 51). Neither is it a motion *in any suit* pending in said court. It does not, therefore, fall within the first paragraph of the section. It is equally clear that it does not fall within the second paragraph, as that part of the section only applies to preliminary motions in *an anticipated suit.* This is apparent from the very language of the statute, and for the additional reason that the whole section applies only to motions *in Court,* and has no application to proceedings like the present, before a judge at chambers.

I propose in the next place to consider the effect of the judgment of the Supreme Court in the suit of The People vs. James M. Cook, the record of which is produced before me on this application. It appears by this record that it was adjudged and determined in that suit, "that Mr. Cook was guilty of usurping, intruding into, and unlawfully holding and exercising the office of state treasurer, and the rights and franchises appertaining thereto; and that he be excluded, ousted and removed therefrom, and that the applicant, Benjamin Welch jr, is entitled to the said office, and the rights and franchises thereof." The rule is an elementary one in our laws that the judgment of a court of competent jurisdiction directly upon the point is, as evidence, conclusive between the same parties upon the same matter directly in question in another court (1 *Phil Ev.* 333). This rule ha-

prevailed in every system of jurisprudence with which we have any acquaintance, and must prevail, not only from its obvious fitness and propriety, but because without it an end could never be put to litigation. The maxim " *nemo debet bis vexari*," embodies a principle of universal application. The judgment in such cases estops the parties, and neither can claim any thing in opposition to it.

It becomes important, therefore, to inquire what this judgment settles. It is admitted on all hands that it settles the question between these parties that Mr. Cook is a usurper of the office, and not entitled to hold the same, and that the petitioner, Mr. Welch, is entitled to the office. It is claimed by the counsel for the petitioner, that the rendition of the judgment operates *per se*, to oust Mr. Cook and exclude him from the office, and also to establish the right of Mr. Welch thereto, and that, upon taking the official oath and filing the bond required by the statute, he becomes virtually installed into the office. The counsel for Mr. Cook insists that the judgment has no such effect; that it only establishes the fact that Cook is not entitled to the office, and that Welch is; and that the judgment must be executed by some process or mandate of the court before Cook is ousted or Welch put in. This is an important question in the case, as will be seen when we come to consider the effect of the appeal from the judgment. The 441st section of the Code, which is substantially the 48th section of 2 *R. S.* 585, provides that when the defendant " shall be adjudged guilty of usurping or intruding into or unlawfully holding or exercising any office, franchise or privilege, judgment shall be rendered that such defendant be excluded from such office, franchise or privilege." By section 437 of the Code, which is substantially section 32 of 2 *R. S.* 582. It is provided that " the judgment be rendered upon the right of the person so alleged to be entitled " to the office, " and the same be in favor of such person, he shall be entitled, after taking the oath of office, and executing such official bond as may be required by law, to take upon himself the execution of the office, and it shall be his duty, immediately thereafter, to demand of the defendant in the action, all the books and papers, in his custody or in his power, belonging to the office from which he shall have

been excluded." Then comes section 438 of the Code, which is section 33 of 2 *R. S.* 582, and provides that " if the defendant shall refuse or neglect to deliver over such books or papers, pursuant to the demand, he shall be deemed guilty of a misdemeanor, and the same proceedings shall be had, and with the same effect, to compel delivery of such books and papers, as are prescribed in article 5, title 6, chapter 6 of the first part of the Revised Statutes. There is no provision, either in the Revised Statutes or the present Code, of Procedure, for the issuing of any process, or taking any other proceeding upon the judgment to remove the defendant from the office and place the party entitled thereto in possession, and none is required. The rendition of the judgment itself virtually ousts and excludes the defendant from the office. This is apparent from the language of the statute itself. The 441st section of the Code provides that the judgment rendered in such a case shall *exclude him from the office;* and that such is the effect of the judgment is apparent also from section 437 of the Code, which, as we have seen, provides that if the judgment be rendered upon the right of the person so alleged to be entitled to the office, and the same shall be in favor of such person, *he shall be entitled,* after taking the oath of office, and executing such official bond as may be required by law, *to take upon himself the execution of the office,* and it shall be *his duty immediately thereafter,* to demand of the defendant in the action all the books and papers in his custody or within his power, belonging to the office from which *he shall have been excluded.*

The statute therefore is, if judgment be rendered upon the right of the party, &c., he shall be entitled, upon taking the oath and executing the bond. to take upon himself the execution of the office, and it makes it his duty immediately thereafter to demand of the defendant the books and papers belonging to the office from which he shall have been excluded. From which he shall have been excluded by what? The statute itself furnishes the answer; for it speaks of nothing but the *rendition of the judgment,* and gives to the party entitled to the office, upon the rendition of the judgment, the right at once to take upon himself the execution of the office, *on* taking the oath and filing his bond

This view of the statute is greatly strengthened by the omission of the legislature to provide for any process upon the judgment, or other proceeding to remove the usurper and install the party entitled. The right to the office being established by the judgment, they have provided this summary remedy to compel the delivery of the books and papers; and if any process or proceeding of ouster were required upon the judgment to divest the defendant of the office, and install the party entitled, the legislature would undoubtedly have provided some remedy suitable to the case. Such a process, however, I apprehend, would be an anomaly in the law, and should be accompanied with some special instructions to the sheriff as to the mode of its execution. For a process to take from one man *an office,* and give it to another, would be in practice a troublesome thing to execute; and I doubt whether the sheriff could ever satisfy the party entitled thereto that he had delivered it to him, or convince the other party that he had disrobed him of it. It is insisted by the counsel for the defendant that there are some precedents to be found in the early reports in England, where the writ of seizure has been issued to seize the office or franchise into the king's hands. I have looked into these precedents, and they are all cases of a right to a franchise, such as a ferry or a market, which was capable of actual seizure upon the writ. But in the case of an office no such writ is necessary. HOLT, Ch. J., says: " *Such a case needs no writ of execution, for, in a quare impedit, if judgment be against the incumbent, the patron presents without more ado* " (The King vs. The Mayor of London, 1 *Shower,* 274, 276). And it is said, if the king's title be found to lands and tenements, the king shall be in possession by the office only; and so if the king's title be found *to an office of* which continual profit may be taken (*Stanf. on Prerog.* 53, 54; 9 *Coke,* 95 *b.;* 4 *id.* 58, *a.*).

I have looked very carefully into the modern reports of Westminster Hall, and I have not been able to find any such use made of this writ; and the courts in England treat these judgments as actually ousting and removing the defendant from the office. It is said, if a defendant make title to a corporation office as being elected under the mayoralty of a particular person, on issue joined, whether that person were mayor or not, a record of ouster against

him may be read in evidence to show that he was not mayor, which will be conclusive if it is not shown that the judgment was obtained by fraud or collusion (15 *Bacon's Abr.* 187, *Bouv. ed.*; Rex vs. Hebden, 2 *Strange*, 1109; *Andr. Reps.* 389; Rex vs. Grimes, 5 *Burr.* 2598).

But whatever may be the effect of such a judgment in England, I apprehend that under our statutes the rendition of the judgment operates as an actual ouster and exclusion from the office. And such being the effect of the judgment in this case, I take it to be very clear that the appeal from it can not reinstate Mr. Cook. The judgment stands in full force and effect pending the appeal, and until reversed.

It is contended, however, by the counsel for Mr. Cook, that the appeal from this judgment to the Court of Appeals, operates as a stay of all proceedings upon it. This case is governed by section 342 of the Code, which provides that the perfecting of the appeal and giving the undertaking shall stay all proceedings *in the court below upon the judgment appealed from*, except when the judgment directs the sale of perishable property. The very language of the section confines the stay to proceedings in the court below upon the judgment. The proceedings instituted before me are not proceedings *in the court below;* nor are they proceedings *in the suit* (1 *R. S.* 125, § 51, 52, 57). They are not even proceedings *upon the judgment;* though the judgment, it is true, is used as evidence of what it determines. Our courts have construed the stay of proceedings provided by the statute on appeals, as confined to proceedings *in the suit* in which the decree or judgment appealed from is made (4 *Sandf. Ch R.* 390; 3 *Paige R.* 381, 385; 3 *Sandf. S. C. R.* 740). The stay does not prevent the party who is successful below from prosecuting in another court, while the appeal is pending, a demand which was involved in the former suit and not decided by the decree (4 *Sanf. Ch. R.* 390); and it was held in the case of Buckley vs. Keteltas (3 *Sandf. S. C. R.* 740), that the filing with the county clerk of a docket of a judgment entered in that court, and docketing the same with such clerk, is not a proceeding which is stayed by an appeal from the judgment to the Court of Appeals, for the reason that *it is not a proceeding in the court below.* The court say, in

that case, "*After the perfecting the appeal no proceedings in this court can be had.*" And they add: "*A proceeding in this court, we understand to be an act which is done by the authority or direction of this court, express or implied.*" It can not be pretended that these proceedings, authorized *by the statute* to be instituted before a judge at chambers, are to be deemed an act done by the authority or direction of *the Supreme Court*. They have no connection whatever with the proceedings in the court; but they are deemed by the statute original and independent proceedings, having no necessary connection with the suit. It is true, the party uses that judgment as evidence in these proceedings, but that does not make them proceedings in the suit or upon the judgment. This judgment of ouster is conclusive upon the defendant until reversed (Rex vs. Hebden, 2 *Strange*, 1109; Symmes vs. Regem, *Cowper*, 497; Rex vs. Hearle, *Strange*, 628; 8 *Cow. R.* 721, 722); and the judgment is presumed to be in full force, though a writ of error be sued out, when the record does not show any disposition of the writ of error (Gee vs. Nicholson, 2 *Stewart R.* 512).

It has been shown, I think, that upon the rendition of the judgment in the suit of the People vs. Cook, he became ousted and excluded from this office; that upon taking the official oath and filing his bond, Mr. Welch became *eo instanti* invested with the office (*a*), and entitled, under § 437 of the Code, to demand and have from Mr. Cook the books and papers appertaining to the office; and that the appeal from that judgment does not affect the rights of these parties on these proceedings, while that judgment remains unreversed. I feel the less embarrassment in acting upon that judgment, as it was rendered upon a review of the trial at the circuit, by the full bench, after an elaborate argument and mature deliberation; and as I have the precedent of a learned jurist in a similar case. I refer to the decision of Judge KENT, reported in 5 *Hill R.* 633, where he uses the following language: "Under what circumstances a judge is authorized to interfere in this informal way, is not clearly defined. It was contended before me, in an able argument on an application similar to the

(*a*) This is what is called *taking possession of the office* (The People vs. Stevens, 5 *Hill*, 625, per NELSON, *Ch. J.*).

Welch agt. Cook.

present, growing out of the dispute in the sixth ward of the city of New York (see 3 *Hill*, 42). that the judge could never rightfully proceed against an officer *de facto*—that is, one holding or exercising the office under color of claim or title.  In that case, however, I deemed it proper to act against the officer *de facto*, because the Supreme Court had decided (though a writ of error was then pending), that the title of the claimant was good and legal."  He adds: " I considered it my duty to act upon this question without speculating upon the possibility of its being reversed, regarding the Supreme Court; as the appropriate tribunal for the determination of legal questions, the *decisions of which, while unreversed, all inferior officers are bound to respect and obey.*"

The present is a much stronger case than the one before Judge KENT, for here the court have given a judgment of ouster against the defendant, while in the case *ex parte* Heath (3 *Hill R.* 42), upon which Judge KENT acted, the case was before the Supreme Court on mandamus, and they had only decided upon the right of the relator, but had not given a judgment of ouster, against the party holding and exercising the office.  It would be a very easy matter to vindicate the law upon the highest considerations of public policy and expediency as we have determined and administered it in this case.  But as we have nothing to do, but administer the law as we find it, I will only say, it seems to me to be eminently right and proper that after the deliberate judgment of the Supreme Court, giving this office to Mr. Welch, he should be put in possession of the books and papers belonging to it.   There are now none of the difficulties in the case which existed at the time the former application was made to Justice Watson.   The stipulation has expired by its own limitation, and the judgment of the Supreme Court has been amended in the respect in which it was deemed to be defective.   I therefore order and direct, that the respondent deliver said books and papers to the petitioner, and as the statute has made this the only mode of enforcing the delivery, the order must be that a warrant of commitment issue to the sheriff of the county of Albany