## THE PEOPLE *vs.* THE ALBANY AND SUSQUEHANNA RAILROAD COMPANY and others. (1.)

Upon a trial by the court the successful party is under no obligation to submit a draft of the judgment to the adverse party, for amendments. The court may, in its discretion, require it, and direct that the judgment be settled before itself or one of its members.

In case the decision of the court fails to find upon all the facts deemed by the unsuccessful party to be material, his remedy is to propose a finding thereon in his proposed case and exceptions; and it is the duty of the judge, on the settlement thereof, to pass upon the same and to find as requested, or to refuse to so find, so that the party may have the benefit of an exception to his refusal. (*See note b.*)

It *seems* an appeal lies to the general term from an order of the special term, in the nature of an interlocutory decree directing a receiver in the action to surrender the property in his possession to another receiver or to a party to the action.

An order staying all proceedings on the "decision" of the court, if not served until after the entry of judgment, becomes *functus officio*, and does not operate as a stay of proceedings after judgment.

An order staying all proceedings under a judgment does not, *it seems*, stay an independent proceeding against a receiver in the action, to compel him to surrender property he is ordered thereby to deliver to the successful party.

(1.) For this case, and the learned notes accompanying it, the Reporter is indebted to N. C. MOAK, ESQ., of Albany.

The People *v.* Albany and Susquehanna Railroad Company.

If otherwise, an order directing such surrender can only be attacked on a direct proceeding to set it aside.

Proceedings to compel the delivery of property, upon a judgment for costs and the delivery of property, are not stayed by an undertaking conditioned to pay such costs and the costs of the appeal.

If a party has been exercising his legal right, the court cannot inquire into his motives for so doing.

It is proper and quite usual for the court, especially in cases where the findings are long, to furnish the attorney of the successful party with a brief minute of its decision, and request him to prepare proposed findings of fact and conclusions of law. When corrected and signed, the court usually delivers the decision to the successful party to be filed.

Matters set forth in motion papers, or filed, which are not material to the decision, are impertinent, and if reproachful, are scandalous, and may be suppressed by the court on inspection.

APPEAL from an order made at a special term. The facts sufficiently appear in the opinion.

*David Dudley Field*, for the Church-Fisk directors.

*G. F. Danforth*, for the Ramsey directors.

*By the Court*, TALCOTT, J. This is an appeal from an order made at a special term held in Monroe county, denying a motion made by Messrs. Field and Shearman, as attorneys for " Church and others," to set aside all proceedings taken upon the "alleged judgment," entered 31st December, 1869, to require the receiver, Robert L. Banks, to retake possession of the property of which he was originally made receiver, and the persons to whom he has surrendered it to restore possession to him or some other receiver, and to vacate and set aside the alleged judgment and the decision therein mentioned, as irregular, or, in the alternative that so much of the motion be denied, then that the said "alleged judgment" be set aside, and the said decision and findings be sent back to the judge who tried the cause, for re-examination and re-

settlement, and for other and further relief, &c. The opinion below is reported 8 *Abb. N. S.* 122.

It is not entirely certain, from the papers before us, in behalf of what parties the motion was made, as the notice of motion was given by Messrs. Field and Shearman, as attorneys for the defendants Church and others, and nothing appears in the papers to show for what other defendants, besides Church, Messrs. Field and Shearman had appeared as attorneys.

The appeal, however, was argued upon the assumption on both sides that the motion was made in behalf of the persons claiming to be directors of the railroad company, who had assumed to elect Walter S. Church, Esq., as president, and who on the argument were, and herein for convenience will be, styled the Church directors, and was resisted by those claiming to be directors of the company, who had assumed to elect Joseph H. Ramsey, Esq., as president, and who were, and will be herein, styled the Ramsey directors. Both sets of directors, with the presidents by them respectively elected, were parties defendants to the suit. The appeal before us, as appears from the notice of appeal, was taken by the Church directors and one A. J. Phelps. The complaint in the action is not among the papers submitted to us, and from the papers before us we are unable to discover the connection of Mr. Phelps with the case. But it was not claimed upon the argument that he had any interest or right, other than such as was asserted in behalf of the Church directors.

These rival sets of directors had been contending for the possession of the franchise and property of the road, and not only were a great variety of suits commenced, and injunctions issued, in the interest of these respective parties, but the public peace was seriously endangered and even disturbed by their controversies. Under these circumstances the governor of the State, at the request of

both parties to the controversy, and in the interests of public order, took, by his agents, temporary possession of the road and its property, and therefore the attorney-general, upon the request of the governor, instituted this action, the main object of which was to determine whether either, and if either, then which of the rival sets of directors had been lawfully chosen, and was entitled to the possession of the franchises and property of the company.

The action was tried before Justice E. DARWIN SMITH, at the Monroe special term, held on the 29th day of November, 1869. The said justice delivered an elaborate opinion in the case, which it appears was published in the Rochester morning papers of December 31st, 1869, and on that day the findings of fact and conclusions of law arrived at by the said justice, and stated by him in writing, were duly filed, and the judgment or order complained of was entered on the same day, at 2 o'clock and 30 minutes, P. M. By this judgment or order the Ramsey directors were declared to have been duly elected, and to be the lawful directors of the company. It was ordered that certain of the defendants recover their costs of the action against the Church directors; that it be referred to Hon. Samuel L. Selden to pass the accounts of the receiver, and to report what would be a proper extra allowance in the action, and to which of the defendants it should be paid; "to settle such other matters of detail as may be necessary to carry this judgment into effect;" and that the Ramsey directors be let into immediate possession of the property and effects of the road company; and that Mr. Banks, the receiver, transfer to them all the property and assets of the railroad company in his hands, retaining out of the moneys in his hands as such receiver, his fees, expenses and charges to be adjudged by the referee.

The special term which made the order now appealed from, as a part of the order, directed the suppression of

certain affidavits on both sides, and a certain certificate used on the motion.

The points insisted upon by the counsel for the appellants will, for convenience, be considered *seriatim* in the order in which they are presented by their brief.

1st. It is claimed that it was the duty of the successful party, after making a draft of their judgment, to submit it to the adverse party to propose amendments, and that the omission to do so renders the judgment irregular. We do not understand that the service of a draft of judgment and the other proceedings referred to is required by any present provision of law or rule of court, or has been usual under the present practice. Under the former practice of the Court of Chancery, it was customary, in cases where the decree was very special in its character, to serve a copy of the proposed decree upon the opposite party, with notice of settlement before the register. This practice apparently grew out of the fact that there was no other guide to the form of the decree than the mere minute of the decision, or the opinion delivered by the court.

In case the register did not understand the decision, he was in that case only to apply to the court for information.

But it does not appear that it was the practice of that court to set aside a decree merely upon the allegation that a draft had not been previously served and a settlement made on notice.

There was no specific finding of all the facts or conclusions of law accessible to the register or the parties. As the Code now provides that the justice who tries the cause shall give a decision in writing, which shall contain a statement of the facts found and the conclusions of law separately, and that "judgment upon the decision shall be entered accordingly, the reason for the former practice is in a great measure done away with, though something similar may be, and often is, convenient under our present

The People *v.* Albany and Susquehanna Railroad Company.

system. (*a*)   It is not unusual, at present, when the judgment requires provisions of a special character, for the court in its discretion to order it to be settled before, not the clerk, but itself or one of its members.   This is often done in the Supreme Court, and sometimes in the Court of Appeals.   An instance of the latter occurs in the case of *Schermerhorn* v. *Tallman*, (14 *N. Y. Rep.* 94,) where it was ordered that the judgment be settled before Judge Selden.   Owing to the certainty which the clerk and the attorneys may now arrive at in regard to the decision of the court, touching all questions of fact and law intended to be decided by it, the former practice has been long since abandoned, and the settlement of the form of a judgment upon notice, now takes place only by the express direction of the court, or by the special agreement of the parties.   And it is necessary, before a party can set aside or even modify a judgment for want of notice of settle-

(*a*) Before the amendment of section 267 of the Code, in 1870, it was settled that it was the duty of the *clerk*, unless otherwise directed by the court, to enter judgment at once on the filing of the decision or report, and that the successful party might cause it to be done, (*Cotes* v. *Smith*, 29 *How. Pr.* 326, *affirmed* 31 *id.* 153;) also that the omission of the clerk to do so would not be allowed to prejudice the party.  (*Butler* v. *Lee*, 33 *How. Pr.* 252.)

That amendment provides that in cases of trial *by the court*, "judgment upon the decision accordingly, *shall* be entered *four days* thereafter."  Is not this an unwise provision?  Suppose a controversy between rival presidents or directors of a railroad company, as to who is such, *de jure*, and entitled to the control of its funds, often amounting to millions, to be determined against the officers *de facto*, who have possession and control of the funds.  Might not a single unsuccessful defendant step over to New Jersey with them?  Every lawyer will readily perceive a multitude of cases where a delay of justice after its certainty is known, will be equivalent to its denial.  As the amendment provides that judgment *shall* be entered four days thereafter, would the court, even in a proper case, have *power* to deprive the successful party of a *statutory* right, and stay proceedings for more than four days?  Would it not be far better for the legislature to concede to the courts honesty equal to that possessed by its members, and to assume that courts will properly exercise a discretion confided to them, and allow them to control their determinations?

ment, to show that in some material particular, to be pointed out, it is entered otherwise than in accordance with the findings of fact or law, as stated by the judge or referee.

2d. It is said this judgment should be set aside for what is called a "mistrial," by reason of the omission of Justice SMITH to decide the issues which were in the case and contested on the trial.

On this point it might be sufficient to say that the appeal papers do not disclose to us the evidence in the cause, so that we are unable to see what was contested on the trial. But assuming the position of the counsel for the appellants to be well founded in fact, we are of the opinion that whatever may be the remedies to which a party may resort, in case of the omission to find a fact supported by the evidence, and deemed material, a special motion to set aside the judgment for irregularity is not among them, according to a recent decision of the Court of Appeals; the remedy, in case the fact is established by uncontroverted evidence, is by appeal. (*Mason* v. *Lord*, 40 *N. Y. Rep.* 476.) Where the evidence is conflicting as to the fact, the omission to find which is complained of, the remedy is, at the time the case is presented to the judge for settlement, to present and leave a request to find such facts and conclusions of law as he deems necessary to be found in order to protect the rights of the party; and it is the duty of the judge to pass upon such requests, and to find as requested or then refuse to find, so that the party may have the benefit of an exception to his refusal.

Such we understand to be the construction of section 268 of the Code, which requires the judge, *on the settlement of the case*, to specify the facts found by him, and his conclusions of law.(*b*)

(*b*) It is strange that the theory of making and settling a case and exceptions upon trials before the court or a referee does not seem to be understood by many of the profession.

Section 272 of the Code, which applies to referees, provides that "their

The People *v.* Albany and Susquehanna Railroad Company.

The omission to find the alleged fact may have resulted from inadvertence on the part of the justice who tried the cause; on the other hand, it may have resulted from his having determined the fact against the party complaining of the omission, or he may have determined the fact to be immaterial in the case.

In either of the two latter alternatives, a motion at

decision must be given, and may be *excepted to* and reviewed in *like manner,* and with like effect, *in all respects* as in cases of appeal under section 268, (trials before the court,) and they may *in like manner* settle a case or exceptions," (*See Otis* v. *Spencer*, 16 *N. Y. Rep.* 611;) so that the manner of excepting and proposing a case and exceptions, and settling the same, is identical in cases of trial before the court or a referee, and a brief history of preparing for a review of the determination before a referee will equally apply to one where the trial has taken place before the court.

The theory of the *statute* (the Code) is that the decision or report shall be *general* for such judgment in favor of the successful party, as he is found to be entitled. "The decision of the judge or report of the referee, which goes into the record, is merely the authority for entering the judgment, and therefore it merely states, in general terms, what the judgment is to be. All beyond that is mere supererogation." (*Otis* v. *Spencer*, 16 *N. Y. Rep.* 612.) It is true, section 272 provides that "*referees* shall state the facts found, and the conclusions of law, separately." This provision is given at length in the case last cited, and we understand that case to hold that it applies to the settlement of the case and exceptions, and that the decision of the judge, and report of the referee, as contemplated by the Code, may be general, although the court, in *Manly* v. *Insurance Co.*, (1 *Lansing*, 23,) seems to think this section requires the referee to find the facts and conclusions of law in the first instance. In cases where a party may be defeated upon either of several grounds, the report would not inform him what theory the referee adopted upon that, or whether the referee found with him or against him upon others. To remedy this, in part, the court, by its rules, (*Rule* 32,) provided that, upon a trial by *referees,* "they shall, in their decisions and final reports, state the facts found by them, and their conclusions of law, separately." This provision of the rule is supplementary and *additional* to the *statutory* requirements, as to the manner of proposing and settling a case and exceptions for review, which provide that a case and exceptions may be proposed and settled by a referee in "like manner" as by a judge, (§ 272,) and that the judge, "*in settling the case, must* briefly specify the facts found by him, and his conclusions of law."

Until the amendment of section 268, in 1869, although the appellant might have been entirely satisfied with the facts as found by the decision or report, and might not have wished any additional ones, and notwithstanding the

special term would be simply a review of the decision of the special term which decided the cause, and a review of a judgment at special term cannot be had at another special term.

3d. It is claimed that no judgment has yet been perfected, so as to be the subject of review on appeal. That until it becomes complete and final it is not in a condition

decision or report may have been a part of the record, (the judgment roll,) he was, by the decision of the Court of Appeals in *Hunt* v. *Bloomer*, (13 *N. Y. Rep.* 341,) and *Johnson* v. *Whitlock*, (*Id.* 344,) that the court would not look outside the *case* for the facts, required to again incorporate and print the substance of the decision or report in the case. The amendment of 1869 (§ 268) relieved him of this burden by providing that, "for the purposes of an appeal from a judgment rendered on the report of a referee or the decision of a judge on a trial without a jury, it shall not be *necessary* to insert at large, in the case, the findings of fact or conclusions of law of such judge or referee, or the exceptions thereto filed, but if the same appear as part of the judgment roll, they may be referred to and used on the argument of the appeal, with the same effect as though inserted in the case." It is not now "*necessary*" to repeat the facts so found, although the appellant may, at his option, do so, and it is, perhaps, advisable he should, when he wishes additional facts found, in order to have all the facts appear in connection. Suppose a case to have been decided by a referee, and his report to contain all the facts the appellant desires, and he wishes to claim, upon appeal, that the conclusion of law drawn from them is not correct; he can, within ten days, file and serve exceptions to such of the legal conclusions, or portions of them, as he is dissatisfied with, being careful not to have any particular exception cover too much. Thus suppose the conclusion of law to be, that the "plaintiff is entitled to judgment for $50 and interest from May 1, 1860, and costs." If the defendant wish to claim that there was not as much as $50 due the plaintiff, he excepts, 1. To so much of the referee's report as holds that the plaintiff is entitled to recover $50 damages. 2. If he claim that the plaintiff was entitled to *no* interest, to so much thereof as holds that the plaintiff is entitled to recover interest upon $50, from May 1, 1860, or any other time. 3. If he claim that interest was allowed for too long a time, to so much thereof as holds that the plaintiff is entitled to recover interest for a greater period than from the 1st day of May, 1868. 4. If he claim that the plaintiff should have recovered interest upon only a part of the amount found, to so much thereof as holds the plaintiff is entitled to recover interest upon more than $30 of the amount awarded. 5. To so much thereof as holds the plaintiff is entitled to recover costs. He can thus review each question separately, while, if he except generally to the entire conclusion of law, the court might hold he could not so review either question,

to be executed, and that all proceedings taken under it ought to be set aside.

Conceding that this were, as claimed by the counsel for the appellants, not a final judgment, but in the nature of a decretal order, or interlocutory decree, the proceedings under it which they ask to set aside are simply the surrender of the property by the receiver, and the taking of the possession by the Ramsey directors.

and that if the plaintiff were entitled to recover $50 damages, the question of interest could not be reviewed. If he except generally to the allowance of any interest; if the plaintiff were entitled to *any* he could not insist that the time when it was commenced was erroneous. (*McMahon* v. *N. Y. and Erie Railroad Co.*, 20 *N. Y. Rep.* 463. *Graham* v. *Chrystal*, 1 *Abb. N. S.* 121. *Matthews* v. *Duryee*, 4 *Keyes*, 525.)

Every presumption will be made by the appellate court in favor of affirmance, and the appellant must, in the Court of Appeals, present *facts*, found affirmatively, which, on their face show error. If they are not found at all, the court will presume they were found for the respondent, (*Grant* v. *Morse*, 22 *N. Y. Rep.* 323; *Manly* v. *Ins. Co.*, 1 *Lansing*, 20; *Farmers' &c. Bank* v. *Parker*, 37 *N. Y. Rep.* 150; *Bissell* v. *Pearce*, 28 *id.* 255; *Siemon* v. *Schurck*, 29 *id.* 615;) provided upon examining the evidence it appear that it would warrant such additional findings. (*Valentine* v. *Conner*, 40 *N. Y. Rep.* 248.)

In order to found an objection to a refusal to find any fact, even though there be no evidence to the contrary, the referee must be requested, by the proposed case and exceptions, specifically to find the fact, and if he refuse, an exception must be taken to such refusal. (*Grant* v. *Morse*, 22 *N. Y. Rep.* 323. *City Building Company* v. *Fatty*, 4 *Transcript App.* 312.) If the evidence upon the question be not conflicting, the exception to such refusal, or if it be found, to its finding, then presents a question of law. (*Mason* v. *Lord*, 40 *N. Y. Rep.* 476. *Wyman* v. *Childs*, 41 *id.* 159. *Porter* v. *Ruckman*, 38 *id.* 210. *Draper* v. *Stouvenel*, *Id.* 219.)

Suppose a case where the party defeated desires to review the referee's decision, and his report does not find, or refuses to find, one way or the other upon *all* the facts the appellant desires to present, so that exceptions to that will not be sufficient; or that he wishes to contend that a fact found was entirely unauthorized by evidence; or wishes to insist, as he may do at the general term, (*Waters* v. *Green*, 3 *Keyes*, 385; *McCabe* v. *Brayton*, 38 *N. Y. Rep.* 196; *Loeschick* v. *Baldwin*, *Id.* 326,) that the finding was contrary to evidence. He must then prepare and serve a case containing the evidence. He should file and serve separate exceptions to the facts and conclusions appearing in the report, within ten days, or such extended time as he may procure, unless he serve his case and exceptions, containing also such exceptions to the facts

We see no reason to doubt that the court may, by order in the nature of an interlocutory decree, direct its receiver in the action to surrender the property in his possession as such receiver, to some of the parties to the action, to another receiver, or even, as has sometimes been done, to a third party claiming it. And whether such order be interlocutory or final, an appeal lies to the general term, at least.

and conclusions appearing in the report as are necessary to present the questions deemed material. If the case and exceptions contain exceptions to the facts and legal conclusions in the report, or such facts be repeated therein, followed by exceptions thereto, it is not *necessary* to serve them separately. The case " will be, of itself, a compliance with the first clause of the section, and no other exceptions will be required to satisfy that clause." (*Hunt* v. *Bloomer*, 13 *N. Y. Rep.* 343. *Johnson* v. *Whitlock, Id.* 347.) It is advisable, *if a case be made*, to insert them therein. The referee is bound to allow such exceptions as the appellant desires to insert, and if he refuse to do so, the court will send the case back to him for resettlement, and compel him to resettle it. So if he refuse to find one way or the other upon any question of fact proposed in the case, the court, on motion, will compel him to so find, without directing whether the finding shall be in the affirmative or the negative, as the appellant has a *right* to have his *original* case so settled that he can go to the Court of Appeals with it. (*Johnson* v. *Whitlock*. 13 *N. Y. Rep.* 349, 350. *Priest* v. *Price*, 3 *Keyes*, 222. *Manly* v. *Insurance Co.*, 1 *Lansing*, 24–26. *Casler* v. *Shipman*, 35 *N. Y. Rep.* 533, 542. *McKeon* v. *See*, 4 *Rob.* 449, 464.) He should *insist* upon a finding one way or the other, *as a matter of right*, as an exception will not lie to a mere refusal to find at all, (*Casler* v. *Shipman*, 35 *N. Y. Rep.* 533 ; *Colwell* v. *Lawrence*, 38 *id.* 71 ; *Preston* v. *Price*, 3 *Keyes*, 222 ;) unless, possibly, in a case where there was no conflict in the evidence: (*Mason* v. *Lord*, 40 *N. Y. Rep.* 476. *Marvin* v. *Inglis*, 39 *How. Pr.* 329.) On appeal from the judgment, an order refusing to compel a finding on any material question may be reviewed. (*Casler* v. *Shipman*, 35 *N. Y. Rep.* 542.) The practice has, (unless in the seventh district, as hereafter shown, prior to the adoption of the present system of departments,) so far as we are aware, been uniform. In the third district, in *Phelan* v. *A. and S. Railroad*, (*reported on the merits*, 1 *Lans.* 258,) the case was twice sent back to the referee, on his refusal to find either way upon certain facts proposed by the case ; the court the last time (Albany special term, March, 1869) making an order as follows : " Ordered that the case and exceptions herein be sent back to the referee for further settlement of the following facts proposed by the said case and exceptions, (specifying them separately.). It is further ordered, that said referee find one way or the other upon each of said proposed findings, and upon each portion thereof,

The People v. Albany and Susquehanna Railroad Company.

4th. It is next claimed that the proceedings taken under the judgment or order should be set aside, because they were taken in despite of the two orders to stay proceedings, made by Mr. Justice Barnard, and of the appeal and undertaking.

The first order of Justice Barnard was to stay all proceedings on the "decision" of Justice Smith, until the findings of fact and conclusious of law had been served

whether the facts are, or are not, as proposed; and if he find that the same are not, or any portion thereof is not, as proposed, that he allow the defendant to interpose in the case and exceptions, such exceptions to his finding or findings as he may be advised." The cases were sent back for resettlement, and similar orders made, in *Hicks* v. *Dorn*, (*reported on the merits*, 54 *Barb.* 172,) at the same term, and in *Watson* v. *Shuttleworth*, (*reported on the merits*, 53 *Barb.* 357,) at a prior special term at Albany. Of course no fair minded referee would refuse to find one way or the other, upon any question as to which evidence was given on the trial, and he ought not to attempt to determine what questions are material, for the Court of Appeals may not agree with him as to what is material. If he err in such determination he deprives the party of all opportunity to procure the judgment of that court upon the question. Neither ought the court at special term, for the same reason, to do so, as a single fact, if found in favor of the appellant, may neutralize or destroy another, or turn the case.

The refusals to find, in the cases above referred to, were based upon the cases of *Lefler* v. *Field*, (33 *How. Pr. Rep.* 385;) *Nelson* v. *Ingersoll*, (27 *id.* 1;) *Sermont* v. *Baetjer*, (49 *Barb.* 362,) and possibly others in the *seventh* district, and not from any desire upon the part of the referees to avoid doing so. In those cases, however, the court held, contrary to the cases in the Court of Appeals above cited, that the court would make no presumptions in favor of affirmance, but if the facts *found in* and *appearing upon the face of the report itself*, did not justify the judgment, it would be reversed. The last two cases were upon review of the merits, on appeal, and not upon a motion directly to compel a referee to find upon facts proposed for settlement. The first arose on a motion to strike out of the printed case a statement that on the settlement of the case the referee was asked to find upon certain proposed facts, and that he refused to find either way, or to make any additional findings; so that the question whether the court, on motion, would have compelled him to find upon the proposed facts, did not arise in either case, as in the latter, the case, so long as the settlement was not changed, should have conformed to the settlement actually made. In *Trufant* v. *Merrill*, (37 *How. Pr.* 531; 6 *Abb. N. S.* 462,) the Superior Court of New York seems to have held that the court would not, *before* judgment, send the case back for further

The People *v.* Albany and Susquehanna Railroad Company.

upon all the parties, with notice of settlement, and that judgment be not entered until the settlement of such findings and conclusions, upon due notice of settlement to all the parties.

This order appears to have been founded on the affidavit of Amasa A. Redfield, to the effect that he had learned that the justice had decided the cause adversely to the deponent; that deponent had received no formal

---

findings. This case was probably correctly determined; as, if the defeated party did not wish to appeal, a further finding would be useless and unnecessary; and if he did, he could procure the additional findings by proposing them in the case and compelling a finding. In the latter case the question did not, however, arise upon a motion to send the case back, but upon appeal from a subsequent order sending the case to a different referee to take and state the accounts. The Superior Court has expressly held that it was the *duty* of the court, in the *case and exceptions,* to find upon every material fact, and that as the party is not present at the decision, proposing a finding thereon in the case is the only way he can procure findings upon additional questions. (*McKeon* v. *See,* 4 *Rob.* 463, 464.)

The cases in the seventh district, and that in the Superior Court, seem to proceed upon the theory that as soon as the referee has made and filed his report he is *functus officio,* and cannot afterwards perform any act involving judicial discretion, *until set in motion by the court.* The settlement of a case and bill of exceptions is clearly a judicial act. (*Fielden* v. *Lahens,* 14 *Abb.* 48. *Birge* v. *The People,* 5 *Park. Crim. Rep.* 9.) It may well be that the referee cannot gratuitously volunteer new findings, and that in order to authorize him to make them, he should be set in motion by the court, but the court clearly does so constructively, (all acts done by the attorneys in a cause are constructively performed in court,) when a party authorized so to do by law and practice of the court calls upon him to settle a case and exceptions, as a necessary and proper step in the administration of justice by the court. The court constructively and legally calls upon him to exercise one of the duties which his appointment and his entering upon the office of referee require him to perform, and there is no more reason why he should not act judicially in finding facts, than in settling disputes between the parties as to the evidence given upon the trial, or any other question which arose thereon. We think we have shown that the above cases in the *seventh* district, from the manner in which the questions arose, did not pass upon the question we have discussed, and can be harmonized with the practice as we understand it. If, however, this be not so, the decision of the general term in the fourth department, including the seventh district, overrules them, and the practice in the Supreme Court is now uniform throughout the State.

notice of the findings of fact or conclusions of law, as found by Justice Smith; and that according to his belief no such findings of fact had been filed or judgment entered. This seems to have been substantially the same application which had been previously made by Mr. Martindale to Justice Smith, on the same state of facts, and by him denied, which circumstance was not disclosed in the affidavit presented to Justice Barnard, and was perhaps unknown to the attorneys who made the application to the latter justice. (*See Rule* 23*d.*) However this may be, it is apparent on the face of Justice Barnard's order, that it was not intended to operate as a stay of proceedings after the judgment or order to be entered on Justice Smith's decision; and as it was not served till after the entry of that judgment or order, it became *functus officio* before service. A second order was made by Justice Barnard, staying all proceedings under the judgment until the entry of an order on the motion to set aside the judgment, not exceeding twenty days.

The act of the Ramsey directors in taking formal possession of the property occurred on the 31st of December; the order in question was not served upon any person till some time on the 1st of January. On that day proceed-

The case in the Superior Court does not, we think conflict therewith, and we doubt not that if the question were properly presented in that court, it would settle the practice, as it seems to have done in *McKeon* v. *See*, (4 *Rob.* 449,) in conformity to that of the Supreme Court, so that uniformity and certainty, so desirable in practice, will be secured.

The Court of Appeals has power to send a case back to the Supreme Court for resettlement, (*Westcott* v. *Thompson*, 16 *N. Y. Rep.* 613,) even after argument. (*Rice* v. *Isham*, 1 *Keyes*, 44, 47.) As the referee is not an officer of that court, but of the Supreme Court, a motion should be made in the latter court that the case be sent back to him for resettlement. (*Westcott* v. *Thompson*, 16 *N. Y. Rep.* 616.) And though the case be pending in the Court of Appeals, the Supreme Court, at special term, has *power* to order a resettlement, and that the corrected case be returned to the Court of Appeals, with a recall of the former, or a request to correct it. (*Whitbeck* v. *Waine*, 8 *How. Pr.* 433. *Luyster* v. *Sniffin*, 3 *id.* 250.)

ings were taken before Justice Peckham, in Albany, on notice to the receiver, apparently with a view of obtaining the possession of the key of the safe. These proceedings before Justice Peckham were instituted by an order to show cause, founded upon affidavit, showing that the Ramsey directors had the day before taken possession of the office of the company, and by a formal resolution reciting the fact of the judgment, had assumed to take possession of all the property of the company. That Mr. Banks, the receiver, declined to deliver the key of the safe, and the order was to show cause why he (the receiver) should not deliver all the keys of the company in his possession. The proceedings before Justice Peckham, after hearing counsel for the receiver, resulted in an order made by that justice on the 1st of January, that the receiver should deliver over to Mr. Ramsey the keys of the safe, and all the other property of the railroad company in his hands, and, furthermore, declaring that the orders of Justice Barnard did not in any way affect the obligation and duty of the receiver to comply with the requirements of the judgment. The appeal papers do not show that anything was done in pursuance of the order of Justice Peckham. They do not show that the second order of Justice Barnard was served before those proceedings were instituted, although it appears that the order to stay had been served on the receiver before the final order made by Justice Peckham. There is nothing, therefore, to set aside, except the final order made by Justice Peckham.

It was held by Justice Mason, in a case quite analogous, that a proceeding such as that before Justice Peckham was not a proceeding upon the judgment. (*Welch* v. *Cook*, 7 *How. Pr.* 282.) There the application was for an order to deliver the books and papers belonging to the State treasurer. If that decision be correct, it is obvious that the order of Justice Barnard, made in this action, to stay proceedings on the judgment, could not have the effect

to stay the proceedings before Justice Peckham; and, at all events, we think the order of Justice Peckham could not be set aside except upon some direct proceedings to set it aside by motion, certiorari or otherwise.

No act is shown to have been done under that order, and we do not feel called upon simply to set the order aside on this somewhat collateral motion, the notice of which does not refer to the order.

As to the claim that the proceedings were stayed by the appeal and undertaking, the decision of Justice Mason, that the proceeding is not a proceeding on the judgment, equally applies, but moreover, as appears from the papers before us, the appeal was from the entry *as a judgment*, and the only undertaking filed is for the costs and damages to be awarded against the appellants on the appeal. The judgment appealed from directed the delivery of a large amount of real and personal property.

Section 348 of the Code provides that an appeal from a judgment entered on the direction of a single judge of the same court does not stay the proceedings, unless security be given as on an appeal to the Court of Appeals. Therefore to stay the proceedings on the appeal in this case, at least so far as regarded the delivery and taking possession of the property ordered to be delivered, it was requisite that security should be given, as provided in sections 336 and 338 of the Code. This was not done, or attempted.

5th. It is stated that the proceedings of the Ramsey party were taken for the purpose of forestalling an appeal and stay of proceedings.

We cannot inquire into the motives of the parties, but only whether they have been exercising their legal rights.

Under this point it is claimed that it is irregular for the judge to furnish the successful party with his findings before they are filed, or to permit the attorney for the successful party to draw up the proposed findings.

We think, on the contrary, this will be found to have

been the usual practice. Sometimes the counsel for the respective parties submit, at the time of the summing up, the form of the findings and conclusions of law which they respectively claim should be arrived at in the case; and when this is not done formally and in writing, it is supposed that the arguments of the counsel have been addressed to the question of what conclusions of fact and law ought to be found and stated, upon the evidence.

And we think it has been quite usual in practice, especially in cases where the findings are long, for the justice who tried the cause to furnish the attorney of the successful party with a brief minute of his decision, and request him to prepare in form the statement of the findings of fact and conclusions of law; and when these have been submitted, and altered and amended according to the actual decision of the judge, the latter often, instead of going, or sending them, to the clerk's office, personally delivers them to the attorney to be filed. Sometimes the justice is in one place, the attorney for the successful party in another, and the clerk's office in a third, and in such cases it has not been unusual for the justice to send the findings, when signed, by mail to the attorney for the successful party, to be filed, and certainly in most cases, without any communication to the unsuccessful party.

In fact the decision of the judge as to drawing up, delivery and filing, has in practice been treated in the same manner as the report of a referee, and for the same reason. We are not aware that complaint has ever been made that a referee did not file his report personally; that it was drawn up by the successful party; or that it was not communicated before filing, to the opposite party; and we see no reason for a difference of practice in the two cases.

The sixth and last point made by the appellants relates to the supression, on the motion below, of the certificate and affidavits. This was a motion to set aside the judgment or order for irregularity. The certificate was to the

The People *v.* Albany and Susquehanna Railroad Company.

effect that the *opinion* of Justice Smith, delivered in the case, was erroneous. Obviously this had no bearing on the question of the regularity of the judgment. It is equally clear that the affidavits touching what transpired in the interview between Mr. Martindale and the justice, at the house of the latter, and again when the order to stay proceedings was moved for and denied, had no relevancy to the question.

Matters set forth in papers presented to the court, or filed, which are not material to the decision, are impertinent, and if reproachful, are scandalous. (1 *Barb. Ch. Prac.* 202.) This certificate and the affidavits in question being irrelevant, were impertinent, and the affidavits tending to impute to the justice vacillation of purpose or opinion, and to the counsel for the Church directors great infirmity of temper, were also scandalous. In such case affidavits and other papers, on a motion, may be suppressed by the court, on inspection. (1 *Barb. Ch. Prac.* 574.)

We are of the opinion that the order appealed from should be affirmed, with ten dollars costs, and order accordingly.

The order appealed from having been made by Justice Johnson, he did not sit on the hearing of the appeal.

Order affirmed.

[GENERAL TERM, FOURTH DEPARTMENT, at Buffalo, June 6, 1870. *Mullin* and *Talcott*, Justices.]