Timothy Casler and Lodowick Casler, Respondents, *v.* Oliver N. Shipman and James W. Shipman, Appellants.

Collateral attacks upon a judgment record of the foreclosure of a mortgage cannot be made by one having no interest in the mortgaged premises, derived from the mortgagor or his grantees; and the court will not look into any alleged defect in the proceedings of foreclosure, where neither the mortgagor, nor any one deriving title from or under him, object to plaintiff's title.

Where the grant of an easement in the use of water is measured by the height in the dam to which the plaintiff is entitled, it is no objection to his assertion of his right that he has increased the capacity of his mill, so long as he demands the use of no more water than the limitations of the grant award to him.

Where issues are presented by the pleadings, it is the duty of the court below, when requested, to find every material fact necessary for their determination; but the mere allegation in the case, that the court was requested to find certain facts, which it refused to do, presents nothing for the consideration of the appellate court.

To bring before this court, for review, the refusal of the court below to find a fact, the case must show an offer of the evidence, a refusal to admit it, and an exception to the ruling of the court thereon.

The limited nature of a judgment for damages only, will not prevent its operation as an estoppel as to all questions embraced in the pleadings.

Where, upon review, it appears that the judgment below is substantially correct, subject to such modifications as the appellate court can make, the modifications will be made, and the judgment below will be affirmed, with such modifications.

Appeal from the Supreme Court, sixth district.

The action is upon the equity side, to restrain the defendants from hindering, detaining, or diverting water from the grist-mill belonging to the plaintiffs, in Springfield Centre, Otsego county, and to recover damages for the wrongful detention or diversion of water from the said mill.

The question arising under the pleadings relates to the right to the first use of the water from a mill-pond, which, in 1828, belonged to Elisha Hall, from whom each of the parties derive their title. Hall then owned the land and mill privileges, sites, and water power, now in the possession of, and owned by, these parties in fee.

There is no dispute as to the ownership of the land in the possession of the respective parties. The defendants own the fee of the land covered by the mill-pond from which the supply of water is drawn for the manufactories of the defendants, and the grist-mill of the plaintiffs. The defendants have the ownership and control of the dam which creates the water power, and the flumes through which the water is drawn from the mill to the water-wheels of the defendants' factories, which are located nearer to the mill-pond than the grist-mill of the plaintiffs. The water supply of the grist-mill is also drawn from the same source.

The claim of the plaintiffs is, that their grist-mill has the right to the rise of the water from the mill-pond, at all times, without any detention or waste for the supply or service of the mills or factories of the defendants.

The defendants, while admitting that this right once existed, insist that it has been terminated; and, also, that, if it does, in fact, exist at the present time, the plaintiffs have no legal title to that right.

The right to the dominant use of the water claimed by the plaintiffs was granted by Elisha Hall to Richard Waldby, in June, 1828. On that day, as appears by the deeds put in evidence, Hall conveyed by deed, to Waldby, the undivided half of the grist-mill and appurtenances, and, by another indenture, after reciting the conveyance of the undivided half of the grist-mill, as a part of the said purchase, Hall covenanted and agreed with Waldby, "that he, his heirs, executors, administrators and assigns, shall and may forever have, hold, occupy and possess, together with the said mill, the following appurtenances and privileges, viz.: the water in the upper or large dam upon the stream, to the height that it now is; and if the parties hereto shall choose to raise the same, not exceeding six inches higher, which it is hereby agreed to do, shall be and remain for the use of the said grist-mill, so that the said mill shall, at all times, have the preference in the use thereof, and no diversion of the water shall, at any time, be made, or any other use be made of the same to the hindrance or disturbance of the said grist-mill.   *   *

It is also agreed that the said Waldby shall be at one-third part of the expense of all repairs upon said upper dam; * * * * the said Elisha Hall agreeing to furnish and be to the expense of the remaining two-thirds. In May, 1829, Elisha Hall and Richard Waldby conveyed the grist-mill to George Tunnicliff; and by an instrument in writing, under his hand and seal, of the same date as his deed last mentioned, Richard Waldby, after reciting the conveyance of the grist-mill, assigned to George Tunnicliff all his right and title to the privileges granted to him by the said Elisha Hall, subject to the covenants contained in the indenture whereby the said privileges were granted to Waldby as above mentioned. George Tunnicliff and Elisha Hall also entered into an agreement in writing, under seal, of the same date, reciting the conveyance of the grist-mill, and the assignment by Waldby of the agreement, granting the water from the big pond to the said George Tunnicliff, whereby Hall agreed to accept Tunnicliff in the place of Waldby as to the covenants in the said agreement, and both mutually agreed to adopt the covenants of the agreement according to the intention of the said assignment. George Tunnicliff conveyed the grist-mill and the same privileges to Ferdinand Tunnicliff, in January, 1842, and he, in April, 1844, conveyed the same to Elisha Elliott, who conveyed the equal undivided half part of the same to the defendant, Oliver N. Shipman, by deed, bearing date the next day. Shipman reconveyed the same to Elisha Elliott in March, 1846.

In May, 1850, Elisha Elliott mortgaged the same premises, with the appurtenances, to Albert Cotes, to secure the sum of $400. and interest, payable in one year. Proceedings were taken to foreclose this mortgage under the statute, which resulted in a sale of the property mortgaged to Andrew Smith in October, 1853, record of the proceedings being filed in the county clerk's office December, 1856. Smith conveyed the same premises to Andrew H. Houghtaling, by deed dated in April, and acknowledged in November, 1853. Houghtaling conveyed the same to the plaintiff, Timothy Casler, in February, 1857, and he conveyed the undivided half thereof

to the other defendant, Lodowick Casler, in January, 1858.

The defendants derive their title to the big pond, as it is called, which is the source of the water power in question, as follows, viz: : Elisha Hall conveyed the undivided half of twenty acres of land, including the mill-pond water privilege, together with the oil-mill, saw-mill and mill-house, *excepting a portion of the water privilege, theretofore granted to George Tunnicliff*, to James Whipple, by deed dated May 18th, 1830. He died seized of the premises, leaving a will, devising them to his four sons.

Elisha Hall conveyed the other half part of the said mill-pond and water privilege, in the same manner, to Don F. Herrick, by deed, dated October, 1830. Herrick conveyed the same premises to Almon Whipple, with the same reservation, in June, 1836.

Almon Whipple, one of the four sons of James Whipple, having acquired the interests devised to his brother, as above mentioned, conveyed the same premises, with same description and reservation, to the defendant Oliver N. Shipman, July 4th, 1837, who, in 1852, conveyed an undivided half part to the defendant James W. Shipman.

The action was tried before the court, without a jury. The judge found that the right to the use of the water from the mill-pond belonged to the plaintiffs' grist-mill, and was part of the purchase made by Waldby, and was conveyed to him. That it was not a license, but a grant to Waldby, and his heirs and assigns, forever thereafter, to have, hold and possess the water in the dam or pond, to the height it then was, and six inches above. That the pond was the reservoir, and the power of the grist-mill was derived from the fall of the water below. That the water privilege of the grist-mill was dominant, and that of all other mills using the water was servient. That Hall and Waldby considered the grist-mill as the most important, and that the primary right to the use of the water should be appurtenant to it, not to be hindered or impeded by any other use of the water.

That the covenants contained in the instrument between Hall and Waldby, for repairs to the dam, were independent. That the water right was, in no way, conditional or dependent upon the performance of the covenant to repair.

That neither the plaintiffs nor their grantors neglected or refused to aid in repairing the dam *to the extent required by the covenant to repair.*

That the conveyance of one-half of the grist-mill to Oliver N. Shipman by Elisha Elliott was not a merger of the water privilege in him; and, if such had been its effect, the privilege was parcel of the estate, and that he restored it by his reconveyance of the mill and its appurtenances, without any restriction or limitation.

That the same matters had been in controversy in a suit between Elisha Elliott, plaintiff, and Oliver N. Shipman, defendant, in which judgment had been rendered against Shipman, and that he and his subsequent grantee, James W. Shipman, were estopped by that judgment, as to most, if not all, the questions here involved. That there had been no abandonment by the plaintiffs, nor by their grantors, of the right to use the water, as granted to them. That the plaintiffs were in possession, and had been for one year before this action was commenced, having the interest of the mortgagee under the mortgage from Elisha Elliott, and that they held under cover of a foreclosure of the said mortgage. That the water power belonging to the grist-mill was possessed and enjoyed without let or hindrance, until the present cause of action arose. That the validity of the said foreclosure proceedings cannot be brought in question here by the defendants. That the plaintiffs are entitled to a perpetual injunction against the hindrance or detention of the water from the grist-mill, and a judgment, declaring their rights, with $50 damages and costs.

The defendants excepted to each of these findings and conclusions of the court, and they also excepted to the refusal of the court to find whether, subsequent to the making of the report of the referee in the action between Elliott and Shipman, and before the payment of the judgment thereon, the

defendant, Oliver N. Shipman, then being the owner and occupant of the upper mills, and Elliott, the owner and occupant of the grist-mill, had agreed by parol that if the said Shipman would pay the judgment entered or to be entered therein, and would not appeal therefrom, and would from thenceforth bear and defray the entire expense of the repairs to the upper dam, which the said Shipman agreed to do, then he, the said Elliott, or his assigns, would not at any time take or use, or make any claim to the water in said upper dam, but would relinquish or abandon all his right or claim thereto, if any he paid, for the use of said grist-mill which parol agreement was executed by said Shipman, he having paid the said judgment and refrained from appealing therefrom, and he having borne and sustained from that time all the expenses of repairing the upper dam, amounting to several hundred dollars, and whether Elliott and his grantees had taken or used or made any claim to the water in the upper dam, but had abandoned and relinquished all claim thereto until the claims made by the plaintiffs in February, 1858, the said Shipman having in the mean time used the water in the upper dam without interference or any claim made by any owner or occupant of the grist-mill; and whether the owners or occupant of the grist-mill had contributed anything to repairs of the upper dam; and whether by reason of such parol agreement the said Shipman had expended several thousand dollars in enlarging his business and works, and increasing the water power and supply of the water to the great benefit of all the mills of the respective parties.

The judgment of the court was entered in conformity with these directions.

Upon appeal the judgement was affirmed at the General Term.

The defendants now appeal from the said judgment to this court.

*John F. Seymour*, for the appellants.

*L. I. Burditt*, for the respondents.

LEONARD, J. From the foregoing analysis of the conveyances by which the parties to this action derive their respective titles, it will be observed that the first use of the water from the large pond was granted by Elisha Hall for the use of the grist-mill in 1828; that George Tunnicliff acquired the grist-mill and the appurtenant right to the water from the large pond in 1829; and that the plaintiffs have the same premises and water right, by an unbroken chain of title, unless there is some defect from the causes to be hereinafter referred to. The conveyance of the land covered by the large pond was made by Hall, the common source of title, in 1830 to James Whipple and Don F. Herrick, and declared to be subject to the prior grant of the water privilege to George Tunnicliff. This is the title subsequently conveyed to the defendants. Unless there has been an acquisition of the water right granted in 1828 and 1829 for the use of the grist-mill, it is entirely clear that the defendants have no shadow of a right to detain or hinder the flow of the water for the sufficient supply of the grist-mill at all times.

By the term " common source of title," as used above, it is not to be understood that Elisha Hall has, in any manner, granted the water privilege for the grist-mill, so that both parties derive a claim of title to that privilege by grant from him; but as the person who resisted the ownership of the privilege, as well as the land which is now owned by the defendants, and from which the water privilege for the grist-mill was taken while he was the owner of both the land and the privilege. If the defendants have any title to the water privilege granted to the grist-mill, it has been acquired by some grant, express or implied, made by some owner subsequently to the conveyance to George Tunnicliff in 1829.

The first point made by the defendants relates to the title of the plaintiffs as derived under the foreclosure of the mortgage from Elliott to Cotes. This foreclosure, it is insisted, was void for want of a compliance with the statute in several particulars. The statute requires the notice of sale to be affixed on the court house door in the county where the pre-

mises are situated, but the affidavit in the foreclosure proceeding, although stating that the notice was affixed to the court house door, does not state in what county. The equity of redemption was owned by Alfred Willsee at the time of the foreclosure, and the notice, although served on Alfred Wilson, does not appear to have been served on Willsee. The mortgagor and two others were served with notice of the sale through the mail, and the affidavit of service proves that it was "directed to them, respectively, at their places of residence," without stating the place of the residence of either. And the notice, it is alleged, fails to conform to the statute, in omitting to state that the "mortgage will be foreclosed by a sale of the mortgaged premises," although it states the mortgage, the default in payment, the power of sale, and the time and place of the sale of the mortgaged premises, which are fully described, with the amount claimed to be due.

These objections are collateral attacks upon the record, not made by any one having an interest, even in the mortgaged premises derived from the mortgagor or his grantees, or any of them. The plaintiffs had been in possession of the grist-mill for more than one year, and had not been subjected to any interruption of the water privileges until a few days before the commencement of their action. Neither the mortgagor, nor any one deriving title or lien under him, appear to object to the plaintiffs' title. They are in quiet possession under a claim of title. The foreclosure proceedings are not within the issue, and it is of no sort of consequence to these defendants whether the proceedings have been strictly regular or not. The plaintiffs stand in the place and represent the rights of the mortgagor, having possession and a record title under the foreclosure proceedings, made by statute, equivalent to a deed, clearly valid against every one but the mortgagor and those claiming through him. (*Craft* v. *Merrill*, 14 N. Y., 456.) The defendants insist, secondly, that the judgment should be limited to one-half of the water privilege granted to the grist-mill. It appears, from a deed in evidence, that George Tunnicliff conveyed one-half of this water privilege, which was appurtenant to his grist-mill, to Asa Easton, in 1836, for

the use of a tannery.  Also, that the grist-mill used but two run of stones in 1828, when the privilege was granted, and, for many years subsequently, no increase was made in the capacity of the mill in this respect; that, in 1858, when the action was commenced, three run of stones were in use, and that the grist-mill drew more water than it did in 1828.

The sufficient answer to this objection is, that the judgment does not exceed the privilege granted by Elisha Hall in 1828 and 1829, when he was the owner of the pond.  He granted the right to the use of the water at the height of the dam as it then existed, and six inches higher, to which height Hall and Waldby agreed to raise the dam.  The water privilege has this extent, and the owner had the right to grant some part of it to other parties, so that he and his grantees, of smaller portions, can insist upon the full supply of water granted in 1828.  Nor does it appear to affect the question that the grist-mill has increased its capacity for business.

The defendants insist, thirdly, that the owners of the grist-mill abandoned the privilege in 1836.  The mill was burned in that year, and not rebuilt for three years; and, in the mean time, the water was diverted from the accustomed channel to the grist-mill for the use of the tannery, which was considerably enlarged.  In 1839 a new flume was built in the large or upper pond, without a gate in it, for drawing water out of the pond, the former flume having had such a gate.  This was done with the knowledge of George Tunnicliff, who then owned the grist-mill.  Repairs have been made to some extent on the dam, at the upper or large pond, every year.  The dam was rebuilt by the defendants in 1842, after its destruction by floods, but the owners of the water privilege contributed very little to rebuilding or repairing, although requested.

These facts appear from an examination of the evidence, but the judge at the trial found that there had been no abandonment of the privilege.  We are bound by the facts as found, but this might be considered as much a conclusion of law as of fact.  The defendants are in some fault for not having brought the subject of the findings before the court

below by motion, if it was desired to have them more fully found, either upon this subject or the agreement alleged to have been made to abandon the water privilege, if the defendant, O. N. Shipman, would pay the judgment without appealing in the case of *Elliott* v. *Shipman*, hereinafter more fully referred to. Where issues are presented by the pleadings, it is the duty of the court below, when requested, to find every material fact necessary to the termination of such issues. It is in the power of the court below to compel a performance of this duty. But the mere allegation in the case, as it is here presented, that the judge was requested to find certain facts, and that he refused, confers no authority on this court to review them. An order made by the court below, upon a proper application by motion, might, upon an appeal to this court from the judgment, bring the merits of such an order, where the right had been refused, under review. Where there has been no finding of the facts below, I am not aware that they can otherwise be brought under examination in this court. There has been no injustice done to the defendants in finding that there was no abandonment, so far as the claim arises from a non-user of the privilege.

Whether the privilege is used by the grist-mill, or a tannery, or for any other purpose, the agreement of 1828 settles its extent, and the rights of the parties. It was not created by usage, but by an express grant by deed. The water has been used below the factories of the defendants, almost continuously, from 1828, by some parties having the right to the privilege then granted. It does not follow that it was abandoned because no one demanded more water from the upper or large pond than the customary flow would furnish. That amount appears to have been generally sufficient.

The grant is unconditional. There is no proviso or condition that the grist-mill, or its owners, must pay a share of the expense of rebuilding or repairing the dam before they can take the water from the large pond.

Where a grant has been by deed, it will require a clear non-user of the privilege for twenty years at least, to bar the claim on that ground. Besides, it does not appear from

the evidence that the defendants have ever, except at short intervals, detained or hindered the flow of the water to the extent demanded by the grant.

The defendants further insist, as a fourth point, that the court below erred in admitting in evidence a judgment of the Supreme Court, recovered in January, 1850, by Elisha Elliott, against the defendant, Oliver N. Shipman.

That action was prosecuted by the said Elliott, while he was the owner of the said grist-mill, and after the reconveyance by the said Shipman to Elliott of the same premises and appurtenances. The statements of the complaint are substantially the same as those of the present action, and the claim to relief rests on the same grants upon which the plaintiffs here rely. The answer interposes an entire denial of the right or privilege claimed, based upon the same objections as to the dependent nature of the covenants in the contract or grant, the obligation resting on the plaintiff, Elliott, to keep the lower dam in repair, so as to save the water, the repairing and raising the upper dam at the expense of the defendant, and that the plaintiff, Elliott, had not contributed to it; the repairing the flume at the sole expense of the defendant, while George Tunnicliff owned the grist-mill, and that he contributed nothing to the expense, although the grant from Hall bound him to do so; the erection of a dam that backed water upon his wheels, and the neglect of the plaintiff, Elliott, to keep the canal or ditch, which conveyed water to the grist-mill, in repair, but to become filled with dirt, so as to diminish the supply of water thereto; and that, except on Sundays, the defendant drew water from the upper dam, which flowed from his machinery, sufficient to keep the lower dam filled, if it were maintained; and also the canal filled, if the water were exclusively employed by the grist-mill in its ordinary use; and, in substance, that the plaintiff, Elliott, had acknowledged his superior right to the water in the large or upper pond, by entering into a contract with the defendant, while they owned the grist-mill together, for leave to draw off water from the upper pond for the use of the grist-mill; that the plaintiff, Elliott, drew off more water in

a dry time, from the upper pond, through the flumes, than would be supplied by the natural stream if suffered to flow without detention.

The claim of the plaintiff, Elliott, was that the defendant be enjoined from detaining the water in the upper dam, and from letting it down too rapidly to the disturbance of the grist-mill; and that the plaintiff be permitted to draw from the upper dam for the use of the grist-mill, and to make a gate in the flume; and that the defendant pay damages for the detention.

The action was tried before a referee, who found that the grist-mill was entitled to a preference in the use of the water below the point mentioned by the deeds of the owners of the grist-mill; that the plaintiff had the exclusive right to the use of all the water in the pond below the point, unless the defendant could use it without hindering the grist-mill, by *returning it to the canal above the mill;* that the defendant had refused to draw water for the grist-mill at times, and had used the water faster than the plaintiff could use it at his mill. The evidence he found unsatisfactory as to the damages, and as, he says, there is but little proof on that subject, he awarded damages for six months at six dollars per month. He states that he took into consideration that the plaintiff did not keep up the little dam below the defendant's works, whereby it would have contained more water, and thus avoided the complaint that the defendant used the water too rapidly.

It thus appears that the water privilege claimed by these plaintiffs was in controversy in that action between a former owner, to whose rights they have succeeded by deed, and the defendant, Oliver N. Shipman, from whom the other defendant, James W. Shipman, also claims by deed. The parties to this action are, therefore, in privity with the parties to the former action, and are bound by that adjudication. It is true that no equitable relief was adjudged in that action, but the facts and conclusions were reported, and the referee states in his report that he leaves the claim for special relief for the consideration of the court. The inference, from the

entry of the judgment for the damages so awarded, only, with the costs of the action, amounting to $105.29 is, that no application to the court was made for special relief, inasmuch as the facts found would have authorized a judgment for the relief demanded.

The limited nature of the judgment, for damages only, will not prevent its operation as an estoppel as to all questions embraced in the pleadings. Damages could have been awarded only upon a determination of the issues in favor of the plaintiff. That judgment was, therefore, properly admitted in evidence.

5. The defendants also urged, fifthly, that an agreement had been made between Elliott and Oliver N. Shipman, after the report of the referee had been made in the said action of *Elliott* v. *Shipman*, and while Elliott was the owner of the grist-mill and all its appurtenances that Elliott would never interfere with the upper dam nor claim the first right to the water in the pond if Shipman would pay the said judgment and not take any appeal. There is nothing found by the court upon this subject, but it appears from the statements in the case that the judge refused to find anything although requested so to do. If evidence was improperly admitted of a parol agreement, then the court were right in refusing to find any fact based upon it; but in any event the case should have been made so as to show an offer of the evidence and a refusal to admit it, and an exception to the ruling, which would have permitted an argument, had the defendants desired to present the question. No such course has been pursued. As the evidence is in the case, the court should have found for or against the fact, as it was in the issue made by the pleadings, and there is evidence bearing upon it. As I understand the practice, this court are not authorized to review facts not found by the court, where the action has been tried without a jury, except when they are matters of record or written evidence. It is a court of review, for the correction of errors of law only. We have nothing before us to be determined on this question. The refusal of the court below to make up the case, or to find

a fact in the manner requested, has not been brought up here in a manner to warrant its review.

I think the refusal to find the fact occurred for the reason that the judge considered the evidence of the parol agreement inadmissible to vary or determine a grant by deed. The agreement, as proved, was by parol; and, whether it would have the effect to impair the obligation of the grant, or the effect of the judgment then rendered by the referee, it was of an inferior degree, and could have no legal effect for the purpose intended. The defendants have not, therefore, been the victims of an error in the practice of the court, or of their counsel.

The defendants also insist, by their sixth point, that the plaintiffs should not be permitted to invoke the equitable powers of the court, except upon the condition of doing equity, and paying their one-third part of the repairs on the upper dam, and also cease to injure the defendants by their lower dam.

The latter branch of the objection is not within the case. It is entirely an independent subject, and the defendants must seek their relief, if they are entitled to any, by an independent action. The court below have so treated it, and have not passed upon the question.

The finding of the judge who tried the case, as to the expenses of the repairs, and by whom paid, is somewhat ambiguous.

The court below say, " whether an action could have been maintained against the grist-mill owners after Tunnicliff, for not repairing the upper dam, is not material to consider, because, as matter of fact, it sufficiently appears that they did not neglect or refuse to aid in such repairs to the extent that the covenant calls for." What, in his opinion, is that extent? The judge has not found what repairs were made, nor the expense, nor the proportion paid by the plaintiffs or the prior owners. Indeed, he could not find the amount definitely, because it was not proved. It was proved that there were annual repairs made, and it appears that no one has contributed anything on the part of the grist-mill owners since.

the rendering of the judgment in the case of *Elliott* v. *Shipman* in 1850. In my opinion, the objection of the defendants, in this respect, is well taken. Whether the defendants have an independent right of action for contribution is not the question. It would be difficult to maintain such an action for the expense incurred for repairs prior to 1857, when the plaintiffs became the owners of the grist-mill, and, as it seems to me, wholly impracticable. The defendants are entitled, nevertheless, to have one-third of those expenses borne by the owners of the grist-mill, while that mill continues to demand the full supply mentioned in the grant of 1828, without any modification for the convenience of the defendants, or reference to receiving a supply after it has served the defendants' factories with motive power over their water-wheels. It is true that the defendants have no lien upon the water in the upper dam, by reason of the neglect of the owners of the grist-mill to pay the share of the expenses for repairs required by the grant of 1828. The right to be paid remains. In an action at law by the plaintiffs to recover damages for the injury occasioned by the violation of their water privilege, the non-payment of the just proportion of these expenses might be considered by way of recoupment or equitable set-off. A court of equity is not less powerful to do justice. Special relief should be denied to the plaintiffs, until they had paid the share appertaining to the grist-mill for the expenses for repairs for six years prior to the commencement of this action down to the time of taking the account.

This relief need not work a reversal or new trial. The case should be sent back, with directions to take an account of these expenses, and that the plaintiffs should pay the proportion to be borne by the owners of the grist-mill, as a condition to the granting of the injunction, which has been awarded by the court below.

The defendants urge, seventhly, that, even if the covenant, of 1828, is in full force, there has been no violation of it under the facts proved. It appears that the defendants' water-wheels, and the gates by which the water could be drawn off, were frozen up at the time of the demand for more water.

The answer denies that the plaintiffs have any right to the water privilege claimed. The defendants should have so constructed their gates and flumes as to have enabled them to comply with such a demand, whenever it should be lawfully fully made. They cannot excuse themselves from the performance of an obligation, or deny an existing right, because they are not prepared with convenient arrangements for compliance.

The defendants, lastly, demand a new trial for alleged erroneous rulings of the court during the trial. Nearly all of them have been substantially answered in previous parts of this opinion. None of them are important.

The first was a motion to dismiss the complaint at the close of the plaintiffs' case. The reasons assigned by defendants were all based upon the supposed mutual and dependent character of the covenants. The defense are mistaken in this construction.

2. A witness was interrogated by the plaintiffs as to the worth of repairing the dam after it was carried away in 1842. No injury resulted from the evidence. No fact was found by the court from the evidence. The defendants had also given evidence on the same subject, previously.

3. One of the plaintiffs was asked whether he went to Cooperstown, and took counsel in relation to the water, after February 24, 1858, and whether he made a verbal demand of the water after the service of a written notice.

The first question was wholly immaterial, and of no consequence. No injury happened from the evidence, given in answer to it.

The demand for the water was pertinent and material, and no well-founded objection can be urged to it, except that it was leading. That is no ground for reversal. The form of the question, in this respect, is within the discretion of the court.

4. The defendants moved the court to strike out all the evidence of declarations made by the former owners, Waldby, Elliott and Tunnicliff. The court reserved the question, although the defendants required the court to pass upon it,

and it does not appear to have been expressly passed upon at all. It is quite clear that the evidence was excluded, on final consideration, as no fact or conclusion has been found based upon the evidence.

5. It is also made a point that the court did not pass upon the fact, whether an agreement was or was not made between Elliott and Shipman for the abandonment of the water privilege. This subject has been fully commented upon, and no error found.

6. The defendants moved that the plaintiffs' counsel, who had been counsel for the defendant, O. N. Shipman, at the trial of the action of *Elliott* v. *Shipman*, and kept minutes of the trial, should be required, by the court, to produce his minutes, but the court denied the motion.

The defendants should have procured them, if they were material, by a subpœna *duces tecum*. It does not appear that they would have been of any service. They were no part of the judgment. They would not have been admissible as evidence for either party, if objected to.

7. The defendants offered the will of James Whipple, to show their chain of title, but it was excluded.

The title of the defendants to all that was granted by Elisha Hall to James Whipple and Don F. Herrick, is conceded by the report of the referee. The evidence offered could have established nothing more. The complaint concedes the same fact. The defendants received no prejudice from the exclusion of this evidence.

The cause was argued with great ability and fairness by the respective counsel, and from the multitude and complication of facts, as well as the respect due to the efforts of careful counsel, it has appeared necessary to consider the numerous questions raised at unusual length.

The judgment should be modified, so as to require the plaintiffs to pay the one-third part of the repairs to the upper mill-dam, to be ascertained by the court below, or a referee to be appointed by that court, for six years before the commencement of the action, down to the taking of the account, which should be paid by the plaintiffs, as a condition of

granting relief, and the same obligation to be continued each year; and each party should pay their own costs on this appeal.

The judgment should, also, declare that it is without prejudice to any right of action the defendants, or either of them, may have for not properly sustaining the dam or canal of the grist-mill, or for allowing the canal to become filled, so as not properly to carry the water, or for causing the water to set back aganist the defendants' wheels.

DAVIES, Ch. J., and PORTER, HUNT, WRIGHT, and PECKHAM, JJ., concurred.

Judgment affirmed, with modification.