(21 Misc. Rep. 770.)

### TOWN OF ONTARIO v. UNION BANK OF ROCHESTER et al.

(Supreme Court, Special Term, Wayne County. October, 1897.)

1. **TOWN BONDS—BONA FIDE HOLDERS—ESTOPPEL.**
   The mere fact that town bonds recite that all necessary legal steps have been taken to comply with the statute authorizing their issue does not estop the town from questioning the validity of the bonds, even in the hands of a bona fide holder, unless it is estopped by an express legislative enactment.

2. **SAME—REFUNDING BONDS—ATTACK ON VALIDITY.**
   Laws 1886, c. 316, § 2, provided that refunding bonds issued under its provisions should recite that they were so issued, and that such recital should be conclusive of the validity and regularity of the bond issue. Act April 15, 1887, authorized the supervisor of the town of Ontario to execute and issue new bonds to pay up and retire the town's bonded indebtedness. Bonds were issued, reciting that they were issued under the acts of 1886 and 1887, and passed to bona fide holders. *Held* that, in attacking the validity of certain bonds of the new series, the town was bound to show that they did not constitute a portion of the issue authorized by statute.

3. **SAME—DUPLICATES—REMUNERATION OF AGENT.**
   To induce the surrender of the old bonds at about 50 cents on the dollar, the supervisor employed an attorney who had represented many of the bondholders, and agreed to issue new bonds to him at the rate of 80 cents for each dollar of old bonds. The bonds were issued at about 50 cents on the dollar, however; and, to pay the attorney for his services, the supervisor issued to him certain duplicates, the total issue being within the amount authorized by the statute. *Held*, that the duplicates were valid in the hands of bona fide holders, since it could not be held, as a matter of law, that the employment of the attorney was unnecessary, or that the supervisor acted in bad faith.

4. **SAME—PURCHASER—INQUIRY.**
   The duplicates were afterwards bought by the supervisor, and pledged as collateral security for a note made by him. The pledgee did not rely merely on the supervisor's representations, or on what appeared on the face of the bonds. but inquired of the attorney of the town, who informed him that the bonds were legally issued, and valid obligations of the town, though ignorant of the fact that duplicates had been issued. *Held*, that the pledgee exercised due caution.

5. **SAME—BREACH OF DUTY—DAMAGES.**
   Where a supervisor of a town issues to bona fide holders bonds which have by statute been made negotiable, and the town does not receive the consideration, the town's right of action grows out of the supervisor's breach of duty as a public officer of the town, and is in the nature of an action for damages.

Action by the town of Ontario against the Union Bank of Rochester and Francis A. Hill. Complaint dismissed.

S. D. Bentley, for plaintiff.
Henry G. Danforth, for defendant Union Bank of Rochester.
Thaddius C. Collins, for defendant Hill.

DAVY, J. The plaintiff brings this action in equity, and seeks the cancellation of three municipal bonds purporting to have been issued by the plaintiff April 1, 1887, and numbered 81 and 84, for $100 each, and 154, for $500, which are now held by the defendant the Union Bank of Rochester as collateral security for the payment of a promissory note made by the defendant Hill, upon which there is now due about $600. The validity of the bonds is assailed upon the ground that they are duplicates, and were fraudulently issued by the defendant Hill as supervisor of the town of Ontario. The principal question, therefore, is whether Hill, as supervisor of said town, had authority, under the statute, to issue them. If he had, and the Union Bank is an innocent holder for value, I am unable to see how this action can be maintained against the bank. While municipal bonds cannot be treated as commercial paper, to the same extent that is usually applied to such instruments, they have the characteristics of negotiable instruments,—sufficiently so, at least, to protect a bona fide holder for value, when the statute has been fully observed in issuing them. Town of Solon v. Williamsburgh Sav. Bank, 114 N. Y. 138, 21 N. E. 168. So that when a purchaser or pledgee receives the same in the usual course of business, in good faith, for a valuable consideration, he acquires a good title, although they may have been diverted from the real object for which they were issued. But, if there has been a failure to comply with the statutory requirements, the purchaser for value cannot be treated as a bona fide holder. Cagwin v. Town of Hancock, 84 N. Y. 532; Dodge v. Platte Co., 82 N. Y. 218. The law requires every person dealing in such securities to take notice of the express provisions of the statute authorizing the municipality to issue them. Brownell v. Town of Greenwich, 114 N. Y. 528, 22 N. E. 24. It appears from the evidence that about the year 1871 the plaintiff, through its commissioners, issued, under chapter 907, Laws 1869, a large number of bonds to aid in the construction of the Lake Ontario Shore Railroad. When these bonds became due the plaintiff refused to pay them, on the ground that they were illegally issued, which resulted in many suits being brought in the federal courts by the bondholders against the town, with varying results. The town finally concluded to issue new 4 per cent. bonds, and take up the old ones. Thereupon the defendant Hill, as supervisor of the town, in the year 1887 issued new 4 per cent. refunding bonds of said town, amounting in the aggregate to $35,900, which recited that they were issued under chapter 158, Laws 1887, and chapter 316, Laws 1886, to pay up and retire the bonded indebtedness of the town. The plaintiff, to make out its cause of action, called the defendant Hill as a witness, who testified that he had been supervisor of the town of Ontario for a number of years prior to March 12, 1889;

that at an annual meeting of said town held prior to April, 1887, a resolution was adopted, in substance, authorizing him, as supervisor, to issue new 4 per cent. bonds to take up the old ones; that he immediately entered into negotiations with the holders of the old bonds for a compromise and surrender of their bonds in exchange for the 4 per cent. new bonds at a considerable discount. He also testified that prior to the issuing of the duplicate bonds in question he made an agreement with one Charles Rhodes that if he would procure from the bondholders, and deliver up to be canceled, several thousand dollars of the old 7 per cent. bonds, and use his influence with others to surrender their bonds at 50 cents on the dollar, he would issue and deliver to him in exchange certain new 4 per cent. bonds of said town at the rate of 80 cents of new bonds for each dollar of old bonds. The new bonds which Hill delivered in exchange for the old ones amounted to about 50 cents on the dollar, but, to carry out the agreement referred to, Hill, a few days before his term of office expired, issued and delivered to Rhodes five duplicate bonds of the denomination of $500 each, and three duplicate bonds of the denomination of $100 each, in part payment for his services in negotiating and exchanging the new bonds for the old ones. It appears that Rhodes had been attorney for the Lake Ontario Shore Railroad Company, and also attorney for a large number of the bondholders in their suits against the town, and these parties could only be reached and induced to surrender their securities through the influence of Rhodes, and for that reason the contract to pay him for his services was made. It also appears that Rhodes, after holding these bonds for a long time, sold them to Hill for 50 cents on the dollar, who thereafter negotiated and delivered a portion of them to the Union Bank of Rochester as collateral security for the payment of said note; but, whether the bonds so negotiated were the duplicates or the originals, Hill was unable to say. The burden of proof rested upon the plaintiff to show that the bonds held by the Union Bank did not constitute a portion of the issue authorized by statute. This it has failed to do. The statute under which the new bonds were issued conferred upon Hill, as supervisor, large discretionary power in carrying out the object and intent of its provisions. His acts, therefore, could not be condemned for errors of judgment or abuse of power, unless they were fraudulently or illegally performed. The federal courts have repeatedly held that, where the legislature has invested the officer of a town or municipality with power to decide whether the condition has been complied with, their recital in the bond that it has been is conclusive of the fact, where the bonds are held by bona fide purchasers, and is binding upon the town. In Town of Coloma v. Eaves, 92 U. S. 484, Mr. Justice Strong says:

"They have declared the contingency to have happened, on the occurrence of which the authority to issue the bonds was completed. Their recitals are such a decision, and beyond this a bona fide purchaser is not bound to look for evidence of the existence of things in pais. He is bound to know the law conferring upon the municipality the power to give the bonds, and the happening of the contingency; but whether this has happened or not is a question of fact, the decision of which is by law confided to those most competent to decide it, and which the purchaser is, in general, in no condition to decide for himself."

47 N.Y.S.—59

The courts in this state, however, have refused to follow the decisions of the federal courts in reference to bona fide holders of municipal bonds. The court of appeals has held that there can be no bona fide holder of town bonds not issued in the manner provided by statute. Cagwin v. Town of Hancock, 84 N. Y. 532. And a recital in the bonds to the effect that all necessary legal steps have been taken to comply with the statute does not estop the town from questioning the validity of the bonds, even in the hands of a bona fide holder for value, unless it is estopped by some legislative enactment. Craig v. Town of Andes, 93 N. Y. 405; Horton v. Town of Thompson, 71 N. Y. 513. In Craig v. Town of Andes, supra, Judge Danforth, in referring to the question of recitals in town bonds, says:

"It is unnecessary to discuss this question, for we have heretofore refused to give that effect to the recital in similar bonds, and have repeatedly held that one who takes such instruments, although in good faith, must see to it that they have been authorized by the statute under which they purport to have been issued."

The law, therefore, construed by the highest court of this state, in reference to issuing town bonds, must control in an action of this kind.

I can see no ground, however, upon which it can be maintained that the bonds in question were issued without legal authority. The alleged irregularities in issuing them for the purposes testified to by Hill would not, in my judgment, invalidate them in the hands of a bona fide holder. The statute under which they were issued (section 2, c. 316, Laws 1886) expressly provides that bonds issued under the provisions of said act, to retire existing bonds, by any authorized officer of the town wherein they are issued, shall contain a recital that they are issued under the provisions of said act, and such recital shall be conclusive evidence in any court of the validity of said bonds, and the regularity of their issue. The bonds which are dated April 1, 1887, are signed by Hill, as supervisor of the town, and contain a recital that they were executed and issued under and by virtue of, and in conformity with, two acts of the legislature of this state,—one passed April 15, 1887, entitled "An act in relation to the bonded indebtedness of the town of Ontario," and the other passed May 11, 1886, and entitled "An act in relation to the bonded indebtedness of villages, cities, towns and counties, and to provide means for the payment and refunding thereof,"—which acts authorized the supervisor of said town of Ontario to execute, under his hand and seal, and to issue, new bonds to pay up and retire the bonded indebtedness of the town. Judge Finch, in speaking for the court in Alvord v. Bank, 98 N. Y. 604, says:

"While this court has never given to such securities, completely and without reserve, the characteristics of commercial paper, and has expressly denied to them the element which furnishes protection to the bona fide holder where authority is apparent, but not real, and does not in that respect change its position, it fully recognizes the right of the legislature, by direct enactment, to impose these characteristics, without exception, upon such municipal bonds as it may choose, and bring them within the rules of protection devised for the safety of innocent holders."

The statute was the basis of Hill's authority, as supervisor, to issue the bonds. There was no law against issuing duplicates, and

the number issued was not in excess of the amount authorized by statute. The mere inspection of them shows that they were executed and issued as the statute required, which, under the act referred to, is conclusive evidence of their validity and the regularity of their issue. The town therefore cannot be permitted to go behind these bonds for the purpose of showing irregularities on the part of the supervisor in issuing them, as against a bona fide holder for value (People v. Mitchell, 35 N. Y. 551; Town of Cherry Creek v. Becker, 123 N. Y. 172, 25 N. E. 369; Williams v. Town of Duanesburgh, 66 N. Y. 137), or questioning the manner in which he may have performed his duty while acting within the limits authorized by the statute. He was clothed with discretionary power as to the number of bonds he should issue to take up the old ones, and the amount that he should pay for them. He could also, in the exercise of his discretion, issue duplicate bonds to pay Rhodes for his services. When the statute commands an act to be done, it authorizes by implication every instrumentality that is necessary for its complete performance. It was held in Mayor, etc., of New York v. Sands, 105 N. Y. 210, 11 N. E. 820, that under the act which authorized the comptroller of New York to create a public fund or stock for certain specific purposes, to be denominated "Consolidated Stock of the County of New York," the officer had power to employ an agent to negotiate the county bonds provided for by the act, and to make any agreement with such agent for his compensation, and to pay him out of the proceeds of the bonds. The court held that in the absence of any evidence of actual fraud or bad faith an action was not maintainable on the part of the county to recover back the money so paid. Ruger, C. J., says:

"It is a matter of public history, of which courts will take judicial notice, that in the sale of bonds and negotiations for loans in behalf of states, municipalities, and governments, the services of their own fiscal agents are usually, if not invariably, supplemented by the employment of bankers, brokers, and other financial agencies to aid in raising money for public purposes." "Appropriations," he says, "are sometimes, but not always, made in the act for the payment of these expenses; but, when the statute commands an act to be done, it authorizes the agent to do all that is necessary for its performance." Sedg. St. & Const. Law, 244.

Hill, therefore, as supervisor of the town of Ontario, could lawfully employ Rhodes to purchase the old bonds, and pay him for his services. It could not be held, as a matter of law, that such employment was unwise, imprudent, and unnecessary to the accomplishment of the object intended by the act. The statute gave him, as supervisor, discretionary power to determine that question; and, if he acted honestly and in good faith, his acts are binding upon the town. No criticism was made upon the general character of the witness, or upon his reputation for truth and veracity. In fact, the plaintiff, after calling him as a witness, could not attack his character, or impeach his general reputation for truth. This rule rests upon the theory often stated by the courts, that when a party calls a witness he presents him as worthy of belief. A party, therefore, will not be permitted to experiment with a witness, and, if his evidence be favorable, to get the benefit of it, and, if the reverse, to say that it is unworthy

of belief. Bullard v. Pearsall, 53 N. Y. 230; Hunter v. Wetsell, 84 N. Y. 555. It is true that Hill might properly be considered as an adverse witness, as he was charged with the commission of a fraud; but, even then, when a party calls a reluctant witness he is prohibited from offering proof of prior contradictory statements by him, or to contradict a witness by another, when the only effect is to impeach, and not to give material evidence upon any issue in the case. Becker v. Koch, 104 N. Y. 401, 10 N. E. 701; 1 Greenl. Ev. § 442. If Hill's testimony is to be believed, then the plaintiff has failed to make out a cause of action. If it is to be disregarded entirely, then the plaintiff has failed to furnish sufficient proof to entitle it to the relief demanded in the complaint. If we were to assume that a portion of Hill's testimony is true, and a portion of it is false, as claimed by the learned counsel for the plaintiff, the difficulty arises in separating the truth from the falsehood. A recovery cannot be had by blending falsehood with truth, and then calling upon the court to sift out and separate one from the other. On the other hand, if we were to give full credit to all of Hill's testimony pertaining to the issuing of the bonds, and his contract and transactions with Rhodes, no fraud could be based upon such testimony or transactions. It is true that Hill's conduct pertaining to these bonds and his alleged transactions with Rhodes are open to grave suspicion,—so much so, at least, that if the bonds were in his possession I should be inclined to hold that he must surrender them to the supervisor of the town of Ontario to be canceled; but as they are now in the possession of the Union Bank, which is an innocent holder for value, I therefore feel constrained, upon all the facts, to uphold their validity.

The learned counsel for the plaintiff contends that the mere fact that Hill pledged these bonds as collateral security for the payment of his note was sufficient to put the bank upon inquiry. The bank, under the circumstances disclosed, might reasonably assume that Hill, who was the lawfully appointed agent of the plaintiff to issue the bonds, would not, after having served the town for a number of years in the board of supervisors, commit a fraud upon its taxpayers. The officers of the bank did not rely merely upon his representations, nor what appeared upon the face of the bonds; but they went still further, and sent one of the employés of the bank to the attorney for the plaintiff, who informed him that the bonds were legally issued and valid obligations of the town. It appears, however, that the attorney was not aware at this time that any duplicate bonds had been issued. It seems to me that the bank availed itself of every source of information on the subject of the validity of the bonds that could be required of a careful and prudent man. The Union Bank, therefore, as pledgee, is entitled to the bonds, so long as the debt for which they were pledged remains unpaid. It is invested with authority to do all acts which are necessary and usual on the part of holders of commercial paper to enforce the collection of its claim. If the plaintiff's contention, that these bonds were never delivered to Rhodes, can be maintained, then the town has an adequate remedy at law and may maintain an action against Hill for the conversion thereof. The injury consists in his

negotiating them to innocent purchasers, and making them enforceable against the town. The plaintiff's right of action grows out of the defendant's breach of duty, as a public officer of the town, and is in the nature of an action for damages. In the case of Railroad Co. v. Kneeland, 120 N. Y. 144, 24 N. E. 384, it was held "that a person who fraudulently places in circulation the negotiable instruments of another, whether made by him or by his apparent authority, and thereby renders him liable to pay the same to a bona fide purchaser, is guilty of tort, and, in the absence of special circumstances diminishing its value, is presumptively liable to the injured party for the face value thereof." The complaint therefore must be dismissed, with costs against the plaintiff in favor of the Union Bank.