(29 Misc. Rep. 359.)

PEOPLE ex rel. PERCIVAL et al. v. CRAM et al.

(Supreme Court, Special Term, Kings County. October, 1899.)

OFFICERS — CIVIL SERVICE RULES — MUNICIPAL COMMISSION — AUTHORITY — WRONGFUL DISMISSAL—REINSTATEMENT.

Under Laws 1899, c. 370, § 6, subd. 1, authorizing the state civil service commission to prescribe, amend, and enforce suitable rules and regulations for carrying the act into effect, and declaring that such regulations shall have the force of law, the municipal civil service commissioners of the city of New York have authority to enact, subject to the approval of the state commission, a rule providing that no person in the classified service in such city shall be removed from office unless and until a statement of the causes of such removal shall be filed with the municipal commission, and a copy of the same furnished to the person so to be removed, and until such person has been afforded an opportunity to present an explanation in writing; and hence a person removed without compliance with such rule, and without hearing, was entitled to reinstatement by mandamus.

Application by the people, on relation of Thomas J. Percival and others, for mandamus against J. Sergeant Cram and others, as commissioners of the department of docks and ferries of New York City. Writ granted.

Joseph A. Burr, for Thomas J. Percival.
Luke D. Stapleton, Asst. Corp. Counsel, for defendants.

DICKEY, J. The determination of this application for peremptory writs of mandamus requiring the commissioners of docks of the city of New York to reinstate and assign permanently to districts in the borough of Brooklyn the relators, and to put their names upon the pay rolls of the department of docks as dock masters, and to audit and pay or cause to be paid to them the salaries of said positions at the rate of $1,500 each per year from September 1, 1899, resolves itself purely into a question of law, as the parties have agreed upon the following state of facts:

(1) That each of the relators, except the relator Thomas J. Percival, was a dock master in the department of finance in the city

of Brooklyn prior to the going into effect of the present Greater New York charter, and the said Percival was a dock master assigned to act as superintendent of docks at the same salary as that paid to other dock masters.

(2) That prior to the 31st day of December, 1897, pursuant to the provisions of section 1536 of the said charter, the officers therein named, including the mayor of the city of Brooklyn, adopted and filed a plan for the transfer of these relators to perform as nearly as might be the same services in the same part of the city, and to hold the same relative rank and position in the said city as constituted by the Greater New York charter, as they held and performed at the time the various municipalities were consolidated into one by said act, and the plan of apportionment determined upon.

(3) That through error these relators were assigned to the department of finance of the city of New York, instead of the department of docks and ferries, as contemplated by said act or said plan of transfer.

(4) That each of the relators continued to act in the same position, and to discharge the same duties as he had performed and discharged prior to the 1st day of January, 1898, until, at various dates between the 8th and 28th days of January, 1898, the above relators were discharged, removed, and dismissed from the service of the city of New York by the comptroller of the said city.

(5) Subsequently, in obedience to a writ of mandamus issued out of the supreme court, the mayors and other officers of said board of transfer, as aforesaid, corrected the error made as aforesaid, and transferred each of the relators to the department of docks and ferries of the city of New York, such correction and transfer to date and take effect, as provided in said order, from the day and date on which said plan of transfer and assignment was determined upon.

(6) That thereafter, and about August 7, 1899, the defendants above named, as commissioners of the department of docks and ferries of the city of New York, reinstated each of the said relators as dock masters in the department of docks and ferries of the city of New York, such reinstatement to take effect from July 1st, and each of the said relators was thereafter directed to report for duty, but none of them had been assigned to active duty in the borough of Brooklyn, or at any place within the city of New York.

(7) That under the provisions of section 1536 of the Greater New York charter it was, among other things, provided that the incumbents of positions abolished or made unnecessary by said act should be preferred for appointment to positions demanding their services, and that for that purpose the civil service commission was directed, so far as practicable, to place the names of such persons upon the proper eligible list, and to give them on such list the preference after veterans.

(8) That on or about the 5th of March, 1898, the municipal civil service commissioners of the city of New York made certain rules and regulations, which were approved by the mayor of the city,

under which the positions of the relators were classified in the schedule of positions subject to competitive examinations, and subsequent thereto, and on or about the 11th day of July, 1899, in pursuance of the provisions of law, certain other municipal civil service rules for the city of New York were approved by the said civil service commissioners, and in and by the said rules and regulations the positions of relators were also classified in the schedule of positions subject to competitive examinations, and among other rules and regulations adopted as aforesaid was rule known as 42, which, among other things, provided as follows:

"To secure compliance with the provisions of the civil service law prohibiting removals because of political opinions or affiliations, no removal of any person in the classified civil service of the city of New York shall be valid unless and until a statement of the causes of such removal shall be filed with the municipal commission, and a copy of the same furnished to the person so to be removed, and until said person has been afforded an opportunity to present an explanation in writing."

(9) That subsequently to the 9th day of January, 1898, and prior to the 17th day of June, 1899, the names of the relators, who were former dock masters of the city of Brooklyn, were placed upon the list in the office of the municipal civil service commission of those persons eligible to appointments as dock masters.

(10) That on June 17, 1899, the defendants and respondents appointed to service as dock masters William Capels and eight other persons, and fixed the pay or compensation of each at $1,500 a year; that neither of the said persons appointed as aforesaid were dock masters at the time of the going into effect of the Greater New York charter. The relators were properly in the service of the city of New York as dock masters.

(11) That on September 1, 1899, each of the relators received from the defendants and respondents a letter of discharge and dismissal, as follows:

"The City of New York, Department of Docks and Ferries,
Pier A, N. R., Battery Place.

"New York, September 1, 1899.

"George K. Copelan, Esq., 233 Frost Street, Brooklyn, N. Y.—Sir: At a meeting of the board of docks held this day, the following preambles and resolutions were adopted:

"'Whereas, at a meeting of the board of docks, held August 7, 1899, in accordance with the opinion of the corporation counsel, dated August 4, 1899, Charles E. Alsberge, Leonard Becker, William J. Cox, George K. Copelan, Abraham Miller, Henry Nahe, Jr., Thomas J. Percival, Edward A. Stauffer, and John Wallace were reinstated as dock masters as of July 1, 1899; and whereas, the dock superintendent, under date of August 31, 1899, reports that the effect of such reinstatement is to increase the force of dock masters beyond the necessities of this department: Resolved, that Chas. E. Alsberge, Leonard Becker, William J. Cox, George K. Copelan, Abraham Miller, Henry Nahe, Jr., Thomas J. Percival, Edward A. Stauffer, and John Wallace be, and they are hereby, discharged from the service of this department, in accordance with said opinion of the corporation counsel, dated August 4, 1899, as their services are superfluous and unnecessary; to take effect at once. Resolved, that the secretary be, and he hereby is, directed to file in the records of this department the reason for such discharge, and to give notice thereof to the persons holding the positions so abolished.'

"Yours, respectfully,        Wm. H. Burke, Secretary."

Neither of the said relators received any other notice of discharge or dismissal, and no statement of the causes of their removal as dock masters was filed with the municipal civil service commission, and no copy of such statement was furnished to either of the relators, and neither of the said relators has been afforded an opportunity to present an explanation in writing, as provided by rule 42, above referred to.

(12) That, prior to the commencement of these proceedings, each of the relators caused to be served upon the defendants and respondents a notice of demand for reinstatement, but the said defendants and respondents have refused to reinstate either of said relators, but have retained in their employ the other dock masters appointed as aforesaid.

It is provided by the municipal civil service rules of the city of New York, as approved by the state civil service commission, July 11, 1899, among other things, as follows:

"To secure compliance with the provisions of the civil service law, prohibiting removals because of political opinions or affiliations, no removal of any person in the classified service of the city of New York shall be valid unless and until a statement of the causes of such removal shall be filed with the. municipal commission, and a copy of the same furnished to the person sought to be removed, and until such person has been afforded an opportunity to present an explanation in writing."

The rules, of which this one is part, were prescribed by the state civil service commission, in default of the approval by the mayor of rules prepared by the city civil service commission. It is conceded by the defendants in these proceedings that this rule has been willfully violated by them. The corporation counsel, representing the commissioners of docks, challenges the right of the civil service commissioners to make any such rule, claiming that in doing so they exceeded their power, and embarked in the business of legislating themselves, and thus attempted wrongfully to add to the law, which he claims had mainly to do with appointments and promotions, and very little or nothing to do with removals. It is conceded that, if the making of such a rule was within the power expressly or impliedly conferred upon such commission, then the removal of the relators was unlawful, and they are entitled to the relief prayed for. The act in question, known as the "White Law" (Laws 1899, c. 370), is entitled "An act in relation to the civil service of the state of New York and the city and civil divisions thereof." In the words "civil service" are included "all offices and positions of trust or employment in the service of the state or of such civil division or city, except such offices and positions in the militia and the military departments as are or may be created under the provisions of article eleven of the constitution." Section 2, subd. 3. Relating generally to the civil service, the act has to do with the classification of positions therein, with appointment to and promotion therein, and with examinations therefor (section 10), and also with removals therefrom. Section 23. By the last section it is expressly provided:

"No recommendation or question under the authority of this act shall relate to the political opinions or affiliations of any person whatever; and no appoint-

ment or selection to or removal from an office or employment within the scope of the rules established as aforesaid, shall be in any manner affected or influenced by such opinions or affiliations."

It will be seen that the statute expressly forbids every board or officer having the power of removal to exercise that power so as to remove from office or employment any person on account of his political opinions or affiliations. The statute also provides that the state civil service commission shall, among other things, "prescribe, amend and enforce suitable rules and regulations for carrying into effect the provisions of this act." Section 6, subd. 1. This means all the provisions of the act, including those relating to removal as well as those relating to appointments or promotions. By provisions of statute these rules were to have the force and effect of law. Id. The act also provides, among other things, that:

"It shall be the duty of such persons [the municipal civil service commission] to make reports from time to time to the state commission, whenever said commission may request, of the manner in which this law, and the rules and regulations thereunder, have been and are administered, and the results of their administration in such city, and of such other matters as the said commission may require, and annually on or before the fifteenth day of January, to make such a report to said commission." Section 10.

The duty is thus imposed upon them to make a report annually, on or before the 15th of January, of the manner of which this law (including the provisions prohibiting removals) has been administered, and also at such other times as the state commission may require. The act also provides that the state commission may, "with the written approval of the governor, remove any municipal civil service commissioner appointed or employed under the authority of this section, for incompetence, inefficiency, neglect of duty or violation of the provisions of this act." Section 10.

It will thus be seen that one of the provisions of the act prohibits removal of an employé for political reasons, and requires the municipal civil service commission to report annually to the state commission whether this, as well as the other, provisions of the law, has been complied with, and how the said law has been administered; and gives the state commission power to remove the municipal civil service commissioner for failure to thus report. Any reasonable rule or regulation prescribed by the municipal civil service commission, which will enable them to comply with the provisions of this section of the act, is clearly within the power impliedly conferred upon them in connection with this duty thus imposed. Whenever a power is given or a duty imposed by statute, everything necessary to make that power effectual or essential to the performance of the duty is conferred by implication upon the person or body given the power or charged with the performance of the duty in the absence of express authority. Mayor, etc., v. Sands, 105 N. Y. 210, 11 N. E. 820; People ex rel. Ostrander v. Chapin, 105 N. Y. 309, 11 N. E. 510; Brownell v. Town of Greenwich, 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685; Town of Ontario v. Union Bank of Rochester, 21 Misc. Rep. 770, 47 N. Y. Supp. 927; Allen v. Sisson (Sup.) 20 N. Y. Supp. 971.

In the Sands Case the court said:

"It is a well-established principle that statutes containing grants of power shall be construed so as to include the authority to do all things necessary to accomplish the object of the grant and to enable the donee of the power to effect the purpose of the act."

In the Ostrander Case the court said:

"It is a general principle that, where a power is given by statute, everything necessary to make it effectual or requisite to attain its end is implied."

In the Town of Ontario Case the court said:

"When the statute commands an act to be done, it authorizes by implication every instrumentality that is necessary for its complete performance."

It being the duty of the municipal civil service commission to report in what manner the provisions of the act prohibiting removals for political reasons were carried out, and the power being given to them to ascertain that, it was entirely proper for them to make a rule or regulation requiring persons who made removals to state the ground of such removal in writing, file it with the municipal commission, and permit the person removed to make his explanation in respect thereto. A written statement on the part of the removing officer as to the reason for the removal, and a written explanation of the person removed, would be helpful to the commission charged with the duty of making its report, in aiding it to determine whether the removal was made in good faith or in violation of the statute for political reasons. If this rule had been made by the municipal civil service commission themselves, for the reasons above stated, it would have been entirely within their power to make a regulation of the character of article 42. The power of the state civil service commission, however, when they are called upon to act as they were in this particular instance, is defined to be to "prescribe, amend and enforce suitable rules and regulations for carrying into effect the provisions of this act," which necessarily means all of the provisions of the act, including that against removals. If the law is as claimed by the attorney for the commissioners, and the civil service law has no plan or intention to restrict the power of removals, and no authority is given to determine whether removals have been made because of political reasons, there is very little or no protection to employés of the city who have secured appointment because of their standing on a merit list, if they can be summarily and arbitrarily removed the next day after their appointment without any assigned reason. Successive enactments of the legislature of civil service acts have been designed to secure to incumbents of positions in the civil service freedom from removal from places because of political opinions, and the rule in question made by the state civil service commission is in entire harmony with that purpose, and a better and improved public service, as such is to be given effect by the courts in its true spirit. It is plain to me that the civil service commissioners in no way exceeded their power in making such a necessary, reasonable and fitting rule, and the dock commissioners should not have disregarded it. Of course, rules of the civil service cannot add to or detract from the statute. They must be in

harmony with the statute, and fairly within its contemplation. I so regard this rule. Writs of mandamus will issue as asked for, with costs in each case.

Writs issued, with costs, in each case.